*1090
 
 OPINION
 

 By the Court,
 

 Agosti, J.:
 

 The issues in this appeal concern the defense of entrapment. A jury found appellant Troy Anthony Foster guilty of unlawful sale of a controlled substance after Foster sold crack cocaine to an undercover officer. On appeal, Foster contends that: (1) he was entrapped as a matter of law because the undercover officer did not have reasonable cause to believe Foster was predisposed to sell drugs before approaching him; (2) the district court did not properly instruct the jury on the defense of entrapment; and (3) the district court erred by admitting evidence of his eight-year-old conviction for possession of a controlled substance on the issue of his predisposition to commit the instant offense.
 

 To the extent that our prior case law required police to have reasonable cause to believe an individual is predisposed to commit a crime before targeting that individual in the context of an undercover operation, it is overruled. Therefore, we conclude that Foster was not entrapped as a matter of law. We further conclude that the district court properly instructed the jury on the defense of entrapment. Finally, we conclude that testimony concerning the circumstances of Foster’s prior conviction for possession of a controlled substance was properly admitted to prove his predisposition to commit the charged offense.
 

 FACTS
 

 The Consolidated Narcotics Unit (“CNU”)
 
 [1]
 
 received complaints from police officers, casino managers and tourists about black males selling crack cocaine in the area of Second Street and Virginia Street in downtown Reno, Nevada. In response to these complaints, the CNU conducted a “buy program” to apprehend the drug dealers.
 

 A female undercover officer walked in the targeted area in an attempt to purchase crack cocaine from black males.
 
 [2]
 
 The officer made eye contact with Foster, a black male, who was standing with four other men. The officer asked Foster, “Got forty?” Apparently, this is the street vernacular for asking someone if they have forty dollars worth of crack cocaine for sale. Foster approached the officer and asked her what she wanted. The offi
 
 *1091
 
 cer repeated, “Got forty?” Foster then told her to “walk this way.’ ’ After Foster and the officer walked approximately fifteen to twenty feet, Foster spat out a bag containing crack cocaine into his hands and gave it to the officer. The officer gave Foster forty dollars, and they separated. Other CNU officers subsequently arrested Foster.
 

 At trial, Foster argued that he was entrapped because the CNU did not have reasonable cause to believe Foster was predisposed to sell drugs before approaching him. Following a two-day trial, a jury convicted Foster of unlawful sale of a controlled substance.
 

 DISCUSSION
 

 Reasonable cause requirement
 

 Relying on Shrader v. State, 101 Nev. 499, 706 P.2d 834 (1985), Foster contends that he was entrapped as a matter of law. He argues in the alternative that the district court failed to properly instruct the jury on the law of entrapment. His identification of these issues causes us to critically review our case law concerning the entrapment defense.
 

 As we have often recognized, entrapment is an affirmative defense.
 
 See id.
 
 at 504, 706 P.2d at 837. The defendant bears the burden of producing evidence of governmental instigation.
 
 See id.
 
 Once the defendant puts forth evidence of governmental instigation, the State bears the burden of proving that the defendant was predisposed to commit the crime.
 
 See id.
 
 ‘ ‘Essentially, the defendant bears the burden of production on the first element, while the prosecution subsequently bears the burden of proof on the second element.”
 
 Id.
 
 at 504, 706 P.2d at 837-38. We do not modify this two-part inquiry, which is well settled. We do, however, abandon the rule enunciated in
 
 Shrader
 
 that ‘ ‘when the police target a specific individual for an undercover operation, they must have reasonable cause to believe that the individual is predisposed to commit the crime.”
 
 Id.
 
 at 501-02, 706 P.2d at 836.
 

 More recently, this court reiterated that “[i]n Nevada, a person’s predisposition to commit a crime must be evident
 
 before
 
 he is targeted, and the authorities must possess ‘reasonable cause to believe the individual is predisposed to commit the crime.’ ’ ’ Roberts v. State, 110 Nev. 1121, 1132 n.7, 881 P.2d 1, 8 n.7 (1994) (quoting
 
 Shrader,
 
 101 Nev. at 502, 706 P.2d at 836) (emphasis added).
 

 Generally, other jurisdictions have readily rejected a reasonable cause requirement.
 
 [3]
 

 See, e.g.,
 
 United States v. Aibejeris, 28 F.3d
 
 *1092
 
 97, 99 (11th Cir. 1994);
 
 see generally
 
 Paul Marcus,
 
 The Entrapment Defense
 
 § 8.04 (2d ed. 1995). As the court explained in United States v. Catanzaro, 407 F.2d 998, 1001 (3d Cir. 1969), “[t]he basic question in an alleged entrapment case is whether the accused was ready and willing to commit the crime if an opportunity should be presented .... No significant purpose would be served by a further showing of [the police agent’s] reason for approaching him.”
 

 Nevada is in the minority if not the only remaining jurisdiction that imposes a requirement of reasonable cause to believe an individual is predisposed to commit a crime before he or she can be targeted in an undercover operation. Applying this unique requirement to the facts of this case would require us to reverse Foster’s conviction because in reality the officer had no reasonable cause to suspect Foster was predisposed to sell drugs before she approached him with her question, “Got forty?” Yet, the police conduct in this case was not unreasonable. Nor can it be characterized as overreaching. Application of the rule to these facts does nothing to deter police misconduct. As can be seen from the facts of this case, adherence to the reasonable cause requirement has the undesirable effect of hampering members of law enforcement in fulfilling their legitimate roles of detecting and preventing criminal activity. We certainly do not condone overreaching or other improper conduct by the police in carrying out their responsibilities. However, we believe the well-settled law of entrapment, which requires the defendant to show evidence of police initiated activity and a consequential showing by the State of the defendant’s criminal predisposition, is sufficient protection against the possibility of police excess.
 

 We now believe that the reasonable cause requirement is unnecessary to further the policy supporting the use of the entrapment defense. As this court explained:
 

 The entrapment defense is made available to defendants not to excuse their criminal wrongdoing but as a prophylactic device designed to prevent police misconduct. ‘ ‘The function of law enforcement is the prevention of crime and the appre
 
 *1093
 
 hension of criminals. Manifestly, that function does not include the manufacturing of crime.”
 

 Shrader,
 
 101 Nev. at 501, 706 P.2d at 835 (quoting Sherman v. United States, 356 U.S. 369, 372 (1958)). We conclude that the reasonable cause requirement unduly restricts reasonably designed police undercover operations implemented to ferret out crime. In the instant case, the CNU conducted the “buy program” in response to a specific problem occurring in downtown Reno. The CNU did not manufacture Foster’s crime. We believe that the reasonable cause requirement is unwarranted as a prophylactic device to prevent police misconduct.
 

 Jury instructions on entrapment
 

 Foster also contends that the district court erroneously instructed the jury in regard to his entrapment defense. The record indicates that the district court properly instructed the jury on the defense of entrapment.
 
 [4]
 
 We take this opportunity, however, to separately comment on Instruction No. 19, which instructed the jury to consider specific factors in determining whether Foster was predisposed to sell drugs. Instruction No. 19 stated:
 

 Five factors are relevant in determining predisposition:
 

 (1) the character of the defendant;
 

 (2) who first suggested the criminal activity;
 

 (3) whether the defendant engaged in the activity for profit;
 

 (4) whether the defendant demonstrated reluctance, and;
 

 (5) the nature of the govemment[’]s inducement.
 

 Of these five factors, the most important is whether the defendant demonstrated reluctance which was overcome by the government’s inducement.
 

 Instruction No. 19 is directly quoted from United States v. Skarie, 971 F.2d 317, 320 (9th Cir. 1992). We have not previously approved of a jury instruction which lists factors relevant in determining the predisposition of a defendant. However, we conclude that this instruction was proper and helpful to the jury. Moreover, we note that the factors listed in Instruction No. 19 are not exclusive. Other jurisdictions have adopted additional factors to consider in determining a defendant’s predisposition.
 
 See, e.g.,
 
 
 *1094
 
 United States v. Dion, 762 F.2d 674, 687-88 (8th Cir. 1985),
 
 rev’d on other grounds,
 
 476 U.S. 734 (1986).
 
 [5]
 

 Evidence of prior conviction
 

 Foster’s final contention is that the district court erred by allowing the State to introduce evidence concerning his eight-year-old conviction for possession of a controlled substance to prove that Foster had a predisposition to sell drugs. At trial, the district court admitted evidence regarding Foster’s previous conviction for possession of a controlled substance. An officer testified that, in 1989, he obtained Foster’s consent to search his vehicle and found twenty-one baggies of marijuana. As a result, Foster was charged with possession of a controlled substance with the intent to sell. However, pursuant to a plea agreement, Foster pleaded guilty in 1990 to possession of a controlled substance.
 

 When a defendant raises the defense of entrapment, he places his predisposition to commit the crime in issue.
 
 See Shrader,
 
 101 Nev. at 504, 706 P.2d at 837. In the instant case, the district court relied upon NRS 48.045(2)
 
 [6]
 
 when it instructed the jury that it could not consider evidence of Foster’s 1990 conviction to show that Foster acted in conformity with this bad trait of character on
 
 *1095
 
 this occasion, but could consider this evidence on the issue of whether or not Foster was predisposed to sell drugs.
 

 NRS 48.055 denominates the methods by which character may be proven as follows:
 

 1. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or in the form of an opinion. On cross-examination, inquiry may be made into specific instances of conduct.
 

 2. In cases in which character or a trait of character of a person is an essential element of a charge, claim or defense, proof of specific instances of his conduct may be made on direct or cross-examination.
 

 The Advisory Committee Note accompanying the 1975 version of Federal Rule of Evidence 405, upon which NRS 48.055 is based, states:
 

 Of the three methods of proving character provided by the rule, evidence of specific instances of conduct is the most convincing. At the same time it possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time. Consequently the rule confines the use of evidence of this kind to cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry.
 

 By raising the defense of entrapment, Foster placed his character directly in issue. Once Foster proffered evidence of governmental instigation, the State was required to prove as an essential element of its case, Foster’s predisposition to commit the charged crime. The district court permitted the State to address a specific instance of Foster’s prior conduct by presenting testimony concerning the circumstances underlying Foster’s 1990 conviction for possession of a controlled substance. Pursuant to NRS 48.055(2), the State was entitled to prove Foster’s predisposition by offering evidence of a specific instance of Foster’s conduct. However the State’s entitlement is not without restriction, and the court’s discretion to admit relevant character evidence is not unfettered. NRS 48.035(1) requires that relevant evidence be excluded “if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury.’ ’ A district court should always use caution when admitting evidence of another crime because of the inherently prejudicial nature of such evidence. Therefore, we hold that when a defendant raises the entrapment defense at trial, evidence of a prior crime may be
 
 *1096
 
 admitted to show that the defendant was predisposed to commit the instant offense where: (1) the other crime is of a similar character to the offense on which the defendant is being tried; (2) the other crime is not too remote in time from the offense charged; and (3) the probative value of the other crime is not substantially outweighed by the danger of unfair prejudice.
 
 [7]
 

 Although a conviction for possession of marijuana would not normally be relevant to the issue of a defendant’s predisposition to sell crack cocaine, the evidence showed that Foster possessed twenty-one baggies of marijuana for the purpose of selling them. Therefore, we conclude that the evidence concerning Foster’s 1990 conviction was of a similar character to the instant offense.
 

 In regard to the second factor, we conclude that Foster’s 1989 conduct was not too remote in time to be relevant to the issue of his predisposition to sell drugs in 1997. Finally, we do not perceive in this case that the probative value of the State’s evidence was substantially outweighed by the risk of unfair prejudice. The jury was instructed that the evidence was to be considered on the issue of Foster’s predisposition to commit the act currently charged against him. The evidence was relevant to that issue and was not unduly inflammatory or confusing. Little time was expended in presenting the evidence, and so no argument can be made that the jury’s focus was disproportionately trained to this incident rather than to the charged crime.
 
 [8]
 
 We conclude that the evidence concerning Foster’s 1989 incident which resulted in his conviction in 1990 was properly admitted.
 

 CONCLUSION
 

 We overrule
 
 Shrader
 
 to the extent that it requires the police to
 
 *1097
 
 have reasonable cause to believe an individual is predisposed to commit a crime before the police may target that individual in the context of an undercover operation. Therefore, we conclude that Foster was not entrapped as a matter of law. We also conclude that the district court properly instructed the jury on the defense of entrapment. Evidence concerning Foster’s eight-year-old conviction for possession of a controlled substance was properly admitted. Accordingly, we affirm the district court’s judgment of conviction.
 

 Rose, C. J., Young, Maupin, Shearing, Leavitt and Becker, JJ., concur.
 

 [1]
 

 The Consolidated Narcotics Unit is composed of officers from the Washoe County Sheriffs Department, Reno Police Department, Sparks Police Department and federal agents from the Drug Enforcement Agency.
 

 [2]
 

 Foster does not contend on appeal that the CNU used any improper racial profiling.
 

 [3]
 

 As support for the reasonable cause requirement, the
 
 Shrader
 
 court relied on Smith v. State, 281 N.E.2d 803, 805 (Ind. 1972), which stated that
 
 *1092
 
 “before the State sets into operation a scheme to trap a particular suspect, there must be probable cause for the suspicions.”
 
 Smith
 
 has been overruled.
 
 See
 
 Hardin v. State, 358 N.E.2d 134, 135 (Ind. 1976). In
 
 Hardin,
 
 the court recognized that “the probable cause to suspect requirement has proven more difficult in its application than originally believed and no longer should be an additional burden upon law enforcement officials as they combat the trafficking in drugs.”
 
 Id.
 

 [4]
 

 Some of Foster’s contentions concerning jury instructions related to the reasonable cause requirement enunciated in
 
 Shrader.
 
 Because we overrule
 
 Shrader
 
 on this point, we do not address the district court’s rejection of these instructions.
 

 [5]
 

 The Eighth Circuit has identified the following ten factors relevant to the issue of a defendant’s predisposition:
 

 (1) whether the defendant readily responded to the inducement offered;
 

 (2) the circumstances surrounding the illegal conduct;
 

 (3) the state of mind of a defendant before the government agents make any suggestion that the defendant shall commit a crime;
 

 (4) whether the defendant was engaged in an existing course of conduct similar to the crime for which the defendant is charged;
 

 (5) whether the defendant had already formed the design to commit the crime for which the defendant is charged;
 

 (6) the defendant’s reputation;
 

 (7) the conduct of the defendant during negotiations with the undercover agent;
 

 (8) whether the defendant has refused to commit similar acts on other occasions;
 

 (9) the nature of the crime charged;
 

 (10) the degree of coercion which the law officers contributed to instigating the transaction relative to the defendant’s criminal background.
 
 Dion,
 
 762 F.2d at 687-88 (citations omitted).
 

 [6]
 

 NRS 48.045(2) provides that:
 

 Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 

 [7]
 

 The restrictions on proof of character under NRS 48.055(2) are not governed by our pronouncement in Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985), Tinch v. State, 113 Nev. 1170, 946 P.2d 1061 (1997), and Qualls v. State, 114 Nev. 900, 961 P.2d 765 (1998). The additional protections against admissibility in those cases are discrete to situations under NRS 48.045(2) where character may be used for non-character or “other” purposes.
 

 [8]
 

 Citing United States v. Skarie, 971 F.2d 317 (9th Cir. 1992), Foster also argues that his conviction should be reversed because the evidence of his 1990 conviction is legally insufficient, standing alone, to establish his predisposition. We disagree. The evidence of Foster’s predisposition was overwhelming. His conviction could he sustained even without reference to the 1989 incident that resulted in his 1990 conviction. Also probative of Foster’s predisposition is that Foster immediately acknowledged the undercover officer’s vernacular inquiry regarding crack cocaine; Foster sold the drugs to the officer without importuning, urging or persuasion whatsoever; Foster already had a baggie of wrapped crack cocaine in his mouth.