OPINION
By the Court, Becker, C. J.:
Willie Warren was charged with one count of conspiracy to commit robbery and one count of robbery. He was convicted of the *889 robbery count and sentenced to a prison term of 72 to 180 months. On appeal, Warren contends that (1) the decoy operation resulting in his arrest constituted entrapment; (2) this court should reject the United States Supreme Court’s holding in Luce v. United States,[1] requiring a defendant to testify or waive any challenge to admissibility of impeachment evidence; and (3) the district court erred in permitting the State to use a certified minute order to rebut an entrapment defense and to impeach him if he testified.[2]
We conclude that Warren waived standing to raise the entrapment defense on appeal. We decline to follow Luce and instead adopt the offer of proof procedure outlined in Wickham v. State[3] Further, we conclude that the district court properly determined that the minute order would be admissible to rebut an entrapment defense, and although we conclude that the district court erred in finding that the minute order could be used for impeachment purposes, any error was harmless because the minute order would have been independently admissible. Accordingly, we affirm the conviction and sentence.

FACTS AND PROCEDURAL HISTORY

Decoy operation and resulting arrest

In November 2003, Las Vegas Metropolitan Police Officer Richard Gagnon posed as a decoy on Main Street between Carson and Lewis. Gagnon dressed as an off-duty casino dealer and placed a stack of twenty one-dollar bills in his dress shirt’s left breast pocket, arranged so that they were visible to anyone near him. Gagnon then walked along Main Street, acting intoxicated and stopping periodically to lean against a wall and drink from a beér can.
While Gagnon was walking, Warren approached with his friend, Shelia Woods. Warren initiated a conversation with Gagnon and then placed his left hand on Gagnon’s left shoulder. Gagnon rested his head on Warren’s forearm. Gagnon felt Warren fishing around in Gagnon’s left breast pocket with Warren’s right hand while Warren continued talking. Gagnon attempted to see into his pocket, but Warren pushed Gagnon’s head away with his forearm. Gagnon then felt and saw Warren take the money out of his pocket. Warren pushed Gagnon’s head away again more forcefully, and Gagnon feared that Warren might punch him.
Warren and Woods then walked away, and Gagnon conveyed the bust signal. Officers arrested Warren and Woods, and a search re *890 vealed the money taken from Gagnon in Warren’s back pocket. The State charged Warren and Woods each with one count of conspiracy to commit robbery and one count of robbery. Woods pleaded guilty; Warren pleaded not guilty.

Trial

At the outset of Warren’s trial, the State inquired whether Warren intended to pursue an entrapment defense. If so, the State informed the court that it would use a certified minute order from a prior California conviction of Warren to rebut the defense by showing predisposition. Warren’s counsel said that Warren would pursue an entrapment defense but objected to the relevancy of the prior conviction because the document was insufficient to establish that the person referenced in the conviction was Warren. Warren objected on no other grounds.
The court inquired whether the State would use the prior conviction for impeachment purposes, to which the State replied that it was only using it to rebut an entrapment defense. The court also inquired whether the State would use the prior conviction during its case-in-chief or on cross-examination. The State informed the court that it anticipated the entrapment defense would be raised through cross-examination and that it wanted to use the prior conviction during its case-in-chief. The court ruled that the State could use the California minute order in its case-in-chief as evidence of predisposition.
The State gave its opening statement without mentioning the California conviction. Warren’s counsel reserved his opening statement. The State presented evidence on the events that led to Warren’s arrest and the decoy operation. The State did not present the California conviction in its case-in-chief.
Warren’s counsel informed the court that Warren would be testifying in his defense. The district court conducted the appropriate Fifth Amendment colloquy. Warren’s counsel inquired whether the State would use the minute order of the California conviction for impeachment purposes if he testified. The State answered affirmatively. Warren’s counsel renewed his objection that the prior conviction should be excluded on the basis of identity. The district court ruled that if Warren took the stand and presented an entrapment defense, the prior conviction could be used for both impeachment purposes and to show predisposition.
During a recess, the State informed the court that it also had a 1984 conviction for Warren from Washington. The State wished to use this conviction for impeachment and rebuttal purposes. In addition, the State wished to use the fingerprints and photo accom *891 panying the Washington conviction to establish that the California minute order conviction referred to Warren.[4] Warren objected.
The district court ruled that the California conviction was admissible, but prohibited the State from using the Washington conviction for impeachment or rebuttal purposes due to its remoteness in time. Warren did not testify, make an opening statement, or call any witnesses. Consequently, the California conviction was never offered for admission.
During the settling of jury instructions, the district court inquired whether an entrapment instruction was necessary. Warren’s counsel stated that it was not necessary because he had not put on any evidence of entrapment. Neither party objected to any of the jury instructions.
At closing argument, Warren’s counsel, having abandoned the entrapment defense, argued that the money could not be considered stolen because it was put in Gagnon’s pocket with the purpose of being taken by someone else. Effectively, the money was being offered for people to take. Therefore, Warren could not have stolen something that someone was giving away for free.
Following argument and deliberation, the jury returned a verdict of not guilty on the one count of conspiracy to commit robbery and guilty on the one count of robbery.

DISCUSSION

Warren argues that his conviction should be set aside based on an entrapment defense. He also contends that we should reject the holding of Luce and find that he has not waived his right to contest the district court’s ruling on the admission of impeachment evidence. Finally, Warren asserts that the district court erred by finding a certified minute order reflecting a prior conviction could be admitted to rebut an entrapment defense and impeach him if he took the stand to testify.

Entrapment defense

Warren argues that the Las Vegas Metropolitan Police Department’s decoy operation constituted entrapment. Because Warren failed to present an entrapment defense below, we conclude that he has waived this argument on appeal.
*892 Entrapment is an affirmative defense.[5] When an affirmative defense is not raised in the district court, argument pertaining to that defense is waived on appeal.[6] Although at the outset of trial, Warren declared his intention to pursue an entrapment defense, he abandoned this defense at the close of trial when he did not request an entrapment instruction. Warren therefore waived his entrapment argument on appeal.[7]

Applicability of Luce

Warren argues that the district court erred by permitting the State to use the minute order of his California conviction for impeachment purposes. Warren contends that the court’s ruling prevented him from testifying. The State argues that Warren failed to preserve this issue for appeal because he did not testify. The State urges this court to adopt the United States Supreme Court’s holding in Luce[8] which would preclude our review of the issue. Warren suggests that this court should not adopt Luce’s holding because our decision in Pineda v. State[9] is at odds with Luce.
In Luce, the Supreme Court held as a matter of federal evidence law that in order to “raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify.”[10] The Court offered two primary reasons in support of its holding.
The first reason involves the weighing of probative value versus prejudicial effect. The Court reasoned that without a defendant’s trial testimony, there is an insufficient record from an in limine ruling to determine whether the trial court properly weighed the probative value of the impeachment evidence against its prejudicial effect.[11] The precise nature of the defendant’s testimony is necessary to perform the balancing.[12]
The second, and more fundamental reason involves the appellate court’s ability to conduct harmless error review. The Court concluded that any harm resulting from a trial court’s erroneous in *893 limine ruling would be speculative absent the defendant’s testimony. [13] And, the Court reasoned that even a proffer of the defendant’s intended testimony would be insufficient to determine whether the error was harmless because a defendant’s testimony could differ from the proffer.[14] Further, the trial court might have changed its ruling during trial for any number of reasons, or the prosecutor might not have actually impeached the defendant with the prior conviction.[15] Therefore, the Court held that a reviewing court could not determine whether a trial court’s error was harmless without the defendant’s trial testimony, and any error would result in automatic reversal. “Were in limine rulings ... reviewable on appeal, almost any error would result in the windfall of automatic reversal; the appellate court could not logically term ‘harmless’ an error that presumptively kept the defendant from testifying.”[16]
We have yet to decide whether to embrace Luce. Warren’s reliance on Pineda to reject Luce is misplaced. In Pineda, we declined to follow the Supreme Court’s holding in Ohler v. United States[17] that a defendant waives the right to appeal a trial court’s in limine decision to admit evidence of prior convictions when he preemptively introduces those convictions on direct examination.[18] The waiver issue that we addressed in Pineda is different from the one presented here because it did not implicate the appellate court’s ability to conduct a harmless error review of the in limine ruling. Because our holding in Pineda involved different issues and considerations, it does not control our decision on whether to adopt the holding from Luce.
States that have adopted Luce generally agree with its premise that a reviewing court cannot meaningfully review a trial court’s in limine impeachment determination without the defendant’s actual trial testimony.[19]
*894 Conversely, states declining to follow Luce maintain that the problem of meaningful review is unfounded when the record sufficiently demonstrates, through an offer of proof, the nature of the defendant’s proposed testimony and that the defendant refrained from testifying when faced with impeachment by a prior conviction.[20] Under such conditions, a reviewing court would have a sufficient record to conduct a harmless error analysis.
In Wickham v. State, the Alaska Court of Appeals adopted an offer of proof test to avoid the appellate review problems discussed in Luce.[21] At trial, the defendant’s counsel made an offer of proof specifically describing the defendant’s anticipated testimony.[22] Counsel unequivocally stated that the defendant’s decision to testify depended on the trial court’s ruling on the impeachment evidence.[23] The appellate court concluded that the record was sufficient to review the trial court’s in limine decision.[24] The Alaska court then reviewed the trial court’s decision for harmless error.[25] Other states that do not follow Luce similarly engage in harmless error review when the record is sufficient to preserve the impeachment issue for appeal.[26]
We conclude that the offer of proof procedure addressed in Wickham eliminates the problems identified in Luce. We therefore adopt the Wickham approach, finding it more persuasive than Luce. When presented with a sufficient record, we will have little difficulty in reviewing a trial court’s decision to admit impeachment evidence of a defendant’s prior convictions. In order to pre *895 serve the issue for appeal, we hold that a defendant must make an offer of proof to the trial court outlining his intended testimony, and it must be clear from the record that, but for the trial court’s in limine ruling, the defendant would have testified.
The record in the instant case provides us with adequate details for review. From the beginning of trial, Warren intended to present an entrapment defense. The record indicates that he would have testified to the facts supporting that defense. Furthermore, the record makes clear that Warren fully intended to testify until the district court ruled that the minute order of his prior conviction could be used for impeachment purposes and to show predisposition. But for the district court’s in limine ruling, Warren would have testified. We therefore conclude that Warren preserved his right to appeal the impeachment issue. Before we consider the impeachment ruling, however, we must first review the propriety of the district court’s ruling regarding the admission of the prior conviction to show predisposition as this affects any harmless error analysis with respect to the impeachment ruling.

Use of minute order to show predisposition

Warren argues that the district court abused its discretion by permitting the State to use a certified minute order of his California conviction to show predisposition if he presented an entrapment defense. Specifically, he argues that the minute order was inaccurate and that the State had no proof that he was the person referenced in the minute order. Warren further contends that the court’s ruling precluded him from presenting his intended defense and from testifying at trial. We conclude that substantial evidence demonstrates that Warren was the individual referenced in the minute order and that the certified minute order was proper evidence of predisposition in rebuttal to an entrapment defense.
In Foster v. State, we determined that raising an entrapment defense places a defendant’s character directly in issue for purposes of NRS 48.055.[27] Under NRS 48.055, proof of specific instances of a defendant’s prior conduct may be used when character is an essential element of the defense.[28] The statute does not limit the manner in which specific instances of prior conduct may be evidenced. Thus, we hold that the State’s intended use of a certified *896 minute order of Warren’s prior conviction in California was an appropriate method to show predisposition.
Also in Foster, this court outlined a three-part analysis to be used by courts in determining whether evidence of a prior conviction should be admitted to show predisposition to rebut an entrapment defense:
(1) the other crime is of a similar character to the offense on which the defendant is being tried; (2) the other crime is not too remote in time from the offense charged; and (3) the probative value of the other crime is not substantially outweighed by the danger of unfair prejudice.[29]
Substantial evidence supports the district court’s express or implied findings on all three factors. We therefore hold that the district court did not abuse its discretion by permitting the State to use the minute order to show predisposition if Warren presented an entrapment defense.

Use of minute order for impeachment purposes

Warren asserts that the district court erred by not carefully balancing the probative value of the prior conviction against its prejudicial effect when there was a question as to whether the person referenced in the minute order was in fact Warren. He further argues that the district court erred by finding that the State could use a certified minute order rather than a certified judgment of conviction for impeachment purposes.
We conclude that the probative value of Warren’s prior conviction was not substantially outweighed by any unfair prejudicial effect. The decision of whether to admit a prior conviction for impeachment purposes under NRS 50.095 is within the discretion of the district court, and we will not disturb the decision absent an abuse of discretion.[30] Further, NRS 50.095 does not limit impeachment to only evidence of felonies relevant to truthfulness or veracity.[31]
*897 Warren’s contention that the California conviction was highly prejudicial because he was not the person referenced in the minute order is unpersuasive. As discussed above, the State had ample evidence to prove that Warren was the person referenced, and Warren never denied that this was his California conviction. Further, had Warren testified, he would have placed his credibility at issue. Warren’s California conviction related to dishonesty, directly challenging his credibility.[32] Although the similarity of the offense to the one for which Warren was on trial increases its prejudicial effect, that fact alone is insufficient to find an abuse of discretion when weighed against its probative value.[33] Therefore, the probative value of Warren’s prior conviction was not substantially outweighed by unfair prejudice, and the district court did not abuse its discretion in admitting it.
However, we agree with Warren’s other argument that the district court erred in allowing impeachment with a minute order rather than a judgment of conviction. The State may not inquire about a prior conviction under NRS 50.095 unless prepared to prove the conviction with a judgment of conviction.[34] We have previously found error in impeachment when the prior conviction was evidenced by: (1) a sealed conviction;[35] (2) an incomplete certified judgment of conviction omitting the defendant’s sentence;[36] (3) FBI rap sheets;[37] and (4) testimony by a court clerk that a jury returned a guilty verdict for the defendant a week prior, but final judgment had not yet been entered.[38]
The document with which the State intended to impeach Warren was a minute order, certified by a deputy clerk of the Superior *898 Court of California, County of San Francisco. Although the minute order indicated the offense for which Warren was convicted and his resulting sentence, it was not a judgment of conviction. We hold that a minute order, certified or otherwise, is insufficient evidence of a prior conviction for impeachment under NRS 50.095. Therefore, the district court erred by ruling that the State could use the California minute order to impeach Warren.[39]

The district court’s error was harmless

Although the district court erred in ruling on the admissibility of the minute order for impeachment purposes, such error was harmless.[40] The minute order was an appropriate method of showing Warren’s predisposition to commit robbery if he raised an entrapment defense. Had Warren taken the stand, the record reflects his testimony would have implicated an entrapment defense, and the minute order would have been properly admitted in rebuttal. Therefore, the district court’s error in determining the minute order would be admissible for impeachment purposes was harmless.

CONCLUSION

For the reasons discussed above, we conclude that Warren’s conviction does not warrant reversal on any ground. Therefore, we affirm the judgment of conviction and sentence.
Rose, Gibbons, Douglas and Parraguirre, JJ., concur.

 469 U.S. 38 (1984).

Warren also asserts there was insufficient evidence to support the conviction and that the sentence constitutes cruel and unusual punishment. We have reviewed these claims and conclude that they are without merit.

 770 P.2d 757 (Alaska Ct. App. 1989).

The State presented evidence that the fingerprints on the Washington conviction matched the FBI fingerprint identification number for Warren and that same FBI identification number appeared in the California conviction. Based on this evidence, the district court concluded that the California conviction was Warren’s.

Foster v. State, 116 Nev. 1088, 1091, 13 P.3d 61, 63 (2000).

See Hubbard v. State, 112 Nev. 946, 948, 920 P.2d 991, 993 (1996).

Even if Warren had properly preserved his entrapment argument for appeal, we conclude that the facts of the LVMPD’s decoy operation do not support an entrapment defense under our recently decided cases Daniels v. State, 121 Nev. 101, 110 P.3d 477 (2005), and Miller v. State, 121 Nev. 92, 110 P.3d 53 (2005).

 469 U.S. 38.

 120 Nev. 204, 88 P.3d 827 (2004).

 469 U.S. at 43.

 Id. at 41.

Id.

Id.

Id. at 41 n.5.

Id. at 41-42.

Id. at 42.

 529 U.S. 753 (2000).

Pineda, 120 Nev. at 208-09, 88 P.3d at 830-31.

See, e.g., State v. Allie, 710 P.2d 430, 437 (Ariz. 1985); Smith v. State, 778 S.W.2d 947, 950 (Ark. 1989); People v. Collins, 722 P.2d 173, 176-78 (Cal. 1986); People v. Brewer, 720 P.2d 596, 597 (Colo. Ct. App. 1985); State v. Harrell, 506 A.2d 1041, 1046-47 (Conn. 1986); Fennell v. State, 691 A.2d 624, 625-26 (Del. 1997); State v. Garza, 704 P.2d 944, 949 (Idaho Ct. App. 1985); People v. Whitehead, 508 N.E.2d 687, 694 (Ill. 1987); People v. Finley, 431 N.W.2d 19, 21-25 (Mich. 1988); State v. Hunt, 475 S.E.2d 722, 727 (N.C. Ct. App. 1996); State v. Glenn, 330 S.E.2d 285, 286 (S.C. 1985); State v. Means, 363 N.W.2d 565, 569 (S.D. 1985); State v. Moffett, 729 S.W.2d 679, 681 (Tenn. Crim. App. 1986); Benavides v. State, 763 S.W.2d 587, 590 *894 (Tex. App. 1988); State v. Gentry, 747 P.2d 1032, 1036 (Utah 1987); Reed v. Commonwealth, 366 S.E.2d 274, 277 (Va. Ct. App. 1988); State v. Brown, 782 P.2d 1013, 1022-25 (Wash. 1989); Vaupel v. State, 708 P.2d 1248, 1249-50 (Wyo. 1985).

See, e.g., Wickham v. State, 770 P.2d 757, 761-62 (Alaska Ct. App. 1989); State v. Ford, 381 N.W.2d 30, 32 n.1 (Minn. Ct. App. 1986); State v. Whitehead, 517 A.2d 373, 376-77 (N.J. 1986); People v. Moore, 548 N.Y.S.2d 344, 346 (App. Div. 1989); State v. McClure, 692 P.2d 579, 584 n.4 (Or. 1984); Commonwealth v. Richardson, 500 A.2d 1200, 1203-04 (Pa. Super. Ct. 1985).

 Wickham, 770 P.2d at 762.

Id. at 762 n.2.

Id. at 762.

Id.

Id. at 763.

See, e.g., Whitehead, 517 A.2d at 376 (acknowledging Luce’s concern that harmless error review would be impossible when a defendant does not testify but concluding that the concern is misplaced and that a defendant’s failure to testify does not place an undue burden on the reviewing court to determine whether any error was harmless).

 116 Nev. at 1095, 13 P.3d at 65-66.

Id. at 1095, 13 P.3d at 65.

Id. at 1096, 13 P.3d at 66.

Pineda, 120 Nev. at 210, 88 P.3d at 832 (citing Givens v. State, 99 Nev. 50, 53, 657 P.2d 97, 99 (1983), overruled on other grounds by Talancon v. State, 102 Nev. 294, 721 P.2d 764 (1986)).

Id. (citing Yates v. State, 95 Nev. 446, 449-50, 596 P.2d 239, 241-42 (1979)).

Warren was convicted of “[p]etty theft; conversion of real property to personal property by severance.” Cal. Penal Code § 487c.

Yates, 95 Nev. at 450, 596 P.2d at 242.

See Yllas v. State, 112 Nev. 863, 867, 920 P.2d 1003, 1005 (1996); Tomarchio v. State, 99 Nev. 572, 578, 665 P.2d 804, 808 (1983); Revuelta v. State, 86 Nev. 224, 226-27, 467 P.2d 105, 107 (1970); Fairman v. State, 83 Nev. 287, 289, 429 P.2d 63, 64 (1967) (citing 3 John Henry Wigmore, Evidence § 980 (3d ed. 1940)).

Yllas, 112 Nev. at 867, 920 P.2d at 1005.

Revuelta, 86 Nev. at 226-27, 467 P.2d at 107.

Boley v. State, 85 Nev. 466, 470, 456 P.2d 447, 449 (1969) (“There can be only one irrefutable documentation of the conviction and that is from the exemplified copy of the judgment.”).

Fairman, 83 Nev. at 289, 429 P.2d at 64.

We also note that the code section under which Warren was convicted in California provides for punishment by “imprisonment in the county jail for not more than one year, or by a fine not exceeding one thousand dollars ($1,000), or by both such fine and imprisonment.” Cal. Penal Code § 487c. NRS 50.095(1) provides that for a conviction to be used for impeachment, the crime must have been “punishable by death or imprisonment for more than 1 year under the law under which [the witness] was convicted.” Because the California code section under which Warren was convicted only provides for imprisonment for “not more than one year,” the district court’s ruling that the prior conviction was admissible for impeachment purposes is plain error.

NRS 178.598.