OPINION
 

 By the Court,
 

 Douglas, J.:
 

 In this appeal, we consider the constitutionality of NRS 201.560, Nevada’s statute criminalizing the use of technology to lure children away from their parents or guardians. We also consider whether the district court’s dismissal of the indictment against respondent, Anthony John Colosimo, was proper. We conclude that the statute is constitutional; we also affirm the district court’s dismissal of the indictment against respondent based on a lack of evidence that he committed the crime charged.
 

 FACTS
 

 Respondent Anthony Colosimo corresponded through the Internet with an undercover police detective from the Washoe County Sheriffs Office whom Colosimo believed to be a fourteen-year-old girl named “Sammi.” Colosimo arrived at a prearranged meeting place with condoms and lubricant, allegedly intending to have sex with the girl. He was arrested and charged with violating Nevada’s “using technology to lure children” statute.
 

 NRS 201.560 reads in pertinent part as follows:
 

 1. ... [A] person shall not knowingly contact or communicate with or attempt to contact or communicate with a child who is less than 16 years of age and who is at least 5 years younger than the person with the intent to persuade, lure or transport the child away from his home or from any location known to his parent or guardian or other person legally responsible for the child to a place other than where the child is located, for any purpose:
 

 (a) Without the express consent of the parent or guardian or other person legally responsible for the child; and
 

 (b) With the intent to avoid the consent of the parent or guardian or other person legally responsible for the child.
 

 NRS 201.560(4)(a) provides that a violation or attempted violation of the law using a computer and with the intent to engage in sexual conduct with the child is a category B felony, punishable by one to ten years of imprisonment and a possible fine.
 

 Colosimo moved for dismissal, contending that the statute was unconstitutional and that he was entrapped. Colosimo further ar
 
 *954
 
 gued that he did not actually communicate with or lure a child or avoid the consent of her parents, as there was no actual minor.
 

 The district court granted his motion, finding the statute vague, overbroad, and violative of both the First Amendment and the Commerce Clause. The district court also held that Colosimo was entrapped and further concluded that the State could not prove the elements of the crime charged since no actual minor, or her parents, ever existed.
 

 DISCUSSION
 

 Constitutionality of the statute
 

 This court reviews the constitutionality of a statute de novo.
 
 [1]
 
 “Statutes are presumptively valid and the burden is on those attacking them to show their unconstitutionality.’ ’
 
 [2]
 

 In its written order granting the dismissal, the district court cited no law but stated that the statute was unconstitutional for several reasons. The district court declared the statute overly broad and vague as applied in this case and found that the statute violated the First Amendment and the Commerce Clause. We disagree.
 

 “The doctrine that a statute is void for vagueness is predicated upon its repugnancy to the due process clause of the Fourteenth Amendment . . . ,”
 
 [3]
 
 “A statute is void for vagueness if it fails to define the criminal offense with sufficient definiteness that a person of ordinary intelligence cannot understand what conduct is prohibited and if it lacks specific standards, encouraging arbitrary and discriminatory enforcement.”
 
 [4]
 
 “The test of granting sufficient warning as to proscribed conduct will be met if there are well settled and ordinarily understood meanings for the words employed when viewed in the context of the entire statutory provision.’ ’
 
 [5]
 

 Our reading of the statute makes it clear that the proscribed conduct is clearly defined and that persons of ordinary intelligence have fair notice of what conduct is forbidden. We conclude that Colosimo did not satisfy his burden of showing that the statute is
 
 *955
 
 unconstitutionally vague, and we conclude that the district court erred in finding otherwise.
 

 First Amendment
 

 Closely connected to the vagueness challenge is the argument that the statute is overbroad and violative of the First Amendment. The United States Supreme Court has “recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society.”
 
 [6]
 
 The Court noted that it has permitted overbreadth attacks “where the Court thought rights of association were ensnared in statutes which, by their broad sweep, might result in burdening innocent associations.”
 
 [7]
 
 However, the scrutiny applied to such statutes lessens when the behavior prohibited is less pure speech and more expressive conduct, especially if that conduct “falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.”
 
 [8]
 

 In
 
 People
 
 v. Foley
 
 [9]
 
 and
 
 State v.
 
 Backlund,
 
 [10]
 
 the Court of Appeals of New York and the Supreme Court of North Dakota, respectively, considered whether similar statutes criminalizing the luring of children over the Internet violate the First Amendment or are overbroad. Both courts held that such statutes were not overbroad and did not violate the First Amendment.
 
 [11]
 
 The New York court found particularly important the “luring prong” of the statute, noting such conduct is distinguishable from pure speech.
 
 [12]
 
 The court concluded that the statute was “a preemptive strike against sexual abuse of children by creating criminal liability for conduct directed toward the ultimate acts of abuse.”
 
 [13]
 
 The North Dakota court agreed with the reasoning of the New York court, noting that “freedom of speech does not extend to speech used as an integral part of conduct in violation of a valid criminal statute.”
 
 [14]
 
 Further,
 
 *956
 
 the court held that “the statute affects only those who willfully target a person believed to be a minor; it does not punish those who inadvertently speak with minors, or who post messages for all Internet users, either adult or minors, to seek out and read at their discretion.”
 
 [15]
 

 We agree with the reasoning of the courts noted above and conclude that the statute at issue is not overbroad and does not violate the First Amendment. As stated by the Ninth Circuit Court of Appeals in
 
 United States v. Meek,
 
 speech in the context of crimes such as these is “merely the vehicle through which a pedophile ensnares the victim.”
 
 [16]
 
 As such, we agree that “[t]he inducement of minors to engage in illegal sexual activity enjoys no First Amendment protection.”
 
 [17]
 

 Commerce Clause
 

 A state statute violates the Commerce Clause “when applied to defeat a transaction which is part of interstate commerce.”
 
 [18]
 
 The United States Supreme Court summarized the pertinent inquiry as whether the state statute discriminates against or unduly burdens interstate commerce:
 

 Not every exercise of state power with some impact on interstate commerce is invalid. A state statute must be upheld if it “regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental . . . unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.”
 
 [19]
 

 Again, we look to several state courts that have considered whether statutes criminalizing the luring of children over the Internet run afoul of the Commerce Clause. The Court of Appeals of New York,
 
 [20]
 
 the Court of Appeals of Ohio,
 
 [21]
 
 and the Supreme Court of North Dakota
 
 [22]
 
 have all held that such statutes do not violate the Commerce Clause. All three courts have analyzed the
 
 *957
 
 possible effect of such statutes on interstate commerce, and those courts have ruled that such statutes do not burden legitimate interstate commerce.
 
 [23]
 
 As stated by the Supreme Court of North Dakota:
 

 “States have a compelling interest in protecting minors from harm generally and certainly from being seduced to engage in sexual activities. Conversely, it is difficult to conceive of any legitimate commerce that would be burdened by penalizing the transmission of harmful sexual material to known minors in order to seduce them.”
 
 [24]
 

 We find those analyses persuasive, even though the electronic messages involved here may have briefly been transmitted to places outside of Nevada. Criminalizing such transmissions can hardly be considered a burden on interstate commerce, especially in light of the fact that the statute criminalizes not the digitized message itself but the intent of the message. We conclude that the district court erred in finding that the statute at issue violates the Commerce Clause.
 

 Entrapment
 

 The State argues that Colosimo did not present evidence that the police did more than provide him with an opportunity to commit the offense. The State further argues that the evidence showed that Colosimo was predisposed to commit the offense. The State also notes the seeming inconsistency in the district court finding entrapment after stating at oral argument that it was a ‘ ‘perfect job of police work.”
 

 Colosimo counters that he was induced to commit the offense by fraudulent representations, and he claims that the police first brought up sex and physical attraction. Further, Colosimo contends that he was not predisposed to commit such a crime, pointing out his clean record, his lack of evidence of any prior such conduct, and his reluctance, which Colosimo claims was evident when he asked his apparent victim if she was a police officer.
 

 “ [Entrapment is an affirmative defense. The defendant bears the burden of producing evidence of governmental instigation. Once the defendant puts forth evidence of governmental instigation, the State bears the burden of proving that the defendant was pre
 
 *958
 
 disposed to commit the crime.”
 
 [25]
 
 This court has recognized five factors that, while not exhaustive, are helpful in determining the defendant’s predisposition:
 

 (1) the character of the defendant;
 

 (2) who first suggested the criminal activity;
 

 (3) whether the defendant engaged in the activity for profit;
 

 (4) whether the defendant demonstrated reluctance; and
 

 (5) the nature of the government’s inducement.
 
 [26]
 

 “ ‘Of these five factors, the most important is whether the defendant demonstrated reluctance which was overcome by the government’s inducement.’
 
 ’
 

 [27]
 

 As an initial matter, we conclude that the State’s posting of Sammi’s profile in the chat room was sufficient instigation to shift the burden to the State to show that Colosimo was predisposed to commit the crime. Analyzing the first factor, there was no evidence of Colosimo’s character, other than his conversations with a person he believed to be a minor, and his willingness to show up and meet that person for a sexual encounter. As to suggesting criminal activity, although Detective Heydon, acting as Sammi, first mentioned the word “sex,” Colosimo brought up the topic first by asking Sammi if she was a virgin. He was the first to state that “we should do it all the way,” although the message was followed by smiley faces and the initials “JK,” indicating laughter and that he was just kidding. There was obviously no profit motive involved here, nor do the parties argue otherwise.
 

 As for Colosimo demonstrating reluctance, we find it outrageous for Colosimo to suggest that his careful questioning of Sammi to find out whether she was a police officer demonstrated reluctance. In fact, such questioning demonstrated just the opposite: Colosimo’s intention to go through with his planned sexual encounter with a minor. Thus, the transcript reveals no reluctance on the part of Colosimo to lure a minor for the purpose of sexual activity.
 

 Finally, the nature of the State’s inducement seems to slightly favor Colosimo. Sammi was seemingly quite easy to convince to engage in “sex talk” and to meet Colosimo. However, in spite of Sammi’s apparent enthusiasm, it was Colosimo who encouraged Sammi to meet him for a sexual encounter. He even addressed her concerns about still being a virgin by telling her that “you could
 
 *959
 
 even say you are still a virgin if you wanted,’ ’ and repeating that the next day.
 

 We conclude that the evidence does not support Colosimo’s contention that he was induced and that he was not predisposed to commit the crime. The transcript provides sufficient evidence of his predisposition, thereby satisfying the State’s burden of showing that Colosimo was not entrapped. Accordingly, we conclude that the district court erred in finding otherwise.
 

 Proof of elements of the crime charged
 

 The State argues that the district court improperly invalidated the statute by misconstruing the word “knowingly” in the statute. The district court construed “knowingly” as factual impossibility. In its order granting Colosimo’s motion to dismiss, the district court held that:
 

 [T]he Defendant could not knowingly communicate with a child less than sixteen years of age because there was no such person communicating with the Defendant, but rather the Defendant was communicating with a police officer forty one years of age representing [herself] to be a child less than sixteen years of age.
 

 Citing
 
 United States
 
 v.
 
 Meek,
 

 [28]
 

 the State contends that Colosimo had the requisite mens rea to violate the statute and that Colosimo’s mistaken belief about the age of the victim is irrelevant. The State claims that the district court committed plain error in “entering what amounts to a pre-trial judgment of acquittal,” arguing that the State presented sufficient evidence to prove that Colosimo violated the statute.
 

 Colosimo responds that because the word “knowingly” is not defined in the statute, the general provisions of NRS Chapter 193 apply. Colosimo claims that NRS 193.017, which defines “knowingly,”
 
 [29]
 
 mandates that the accused must have knowledge that “facts exist which constitute the act or omission of a crime,” and that reasonable belief of those facts is not enough. In its criminal complaint, the State charged Colosimo on the basis of his reasonable belief that the person he was luring was fourteen years old.
 
 [30]
 
 
 *960
 
 Colosimo distinguishes the
 
 Meek
 
 decision by asserting that
 
 Meek
 
 dealt with a violation of the “attempt” portion of the federal statute, whereas here Colosimo. was not charged with attempt but with the actual crime. We agree.
 

 In
 
 Meek,
 
 the Ninth Circuit affirmed a conviction under a federal statute criminalizing the luring and attempted luring of minors for sexual activity.
 
 [31]
 
 The Ninth Circuit analyzed the language of the statute and concluded that taking the more restrictive view of requiring an actual minor to be involved, as suggested by the defendant, would frustrate the purpose of the statute and “would come at the cost of either rarely securing a conviction or putting an actual child in harm’s way.”
 
 [32]
 
 We do not find the Ninth Circuit analysis persuasive here because the defendant in
 
 Meek
 
 was charged with an attempt crime instead of being charged with the actual commission of the crime. In this case, Colosimo was charged with the actual commission of the crime, and he was never charged with an attempt crime.
 

 This court has stated that “when the language of a statute is plain, its intention must be deduced from such language, and the court has no right to go beyond it.”
 
 [33]
 
 “Where the language of a statute is susceptible of a sensible interpretation, it is not to be controlled by any extraneous considerations.”
 
 [34]
 
 The rules of statutory construction for penal statutes are different. “[R]ules of statutory interpretation that apply to penal statutes require that provisions which negatively impact a defendant must be strictly construed, while provisions which positively impact a defendant are to be given a more liberal construction.’ ’
 
 [35]
 
 However, application of those rules necessarily begins with a finding that the statute or statutory provision at issue is ambiguous.
 
 [36]
 

 We find it plain and clear from the language of the statute that in order to commit the offense described, a defendant’s intended victim must be “less than 16 years of age” and that victim must
 
 *961
 
 have actual parents or guardians whose express consent was absent or avoided.
 
 [37]
 
 Because the actual intended victim here was not “less than 16 years of age,” it was legally impossible for the prosecution to prove that element of the crime charged.
 
 [38]
 

 Accordingly, we affirm the order of the district court granting dismissal.
 
 [39]
 

 Rose, C. J., Becker, Maupin, Gibbons, Hardesty and Parraguirre, JJ., concur.
 

 [1]
 

 Sheriff v. Burdg,
 
 118 Nev. 853, 857, 59 P.3d 484, 486 (2002).
 

 [2]
 

 Williams v. State,
 
 118 Nev. 536, 546, 50 P.3d 1116, 1122 (2002).
 

 [3]
 

 Woofter
 
 v.
 
 O’Donnell,
 
 91 Nev. 756, 762, 542 P.2d 1396, 1400 (1975).
 

 [4]
 

 Burdg,
 
 118 Nev. at 857, 59 P.3d at 486-87;
 
 see also Kolender v. Lawson,
 
 461 U.S. 352, 357 (1983).
 

 [5]
 

 Woofter,
 
 91 Nev. at 762, 542 P.2d at 1400.
 

 [6]
 

 Broadrick
 
 v.
 
 Oklahoma,
 
 413 U.S. 601, 611-12 (1973).
 

 [7]
 

 Id.
 
 at 612.
 

 [8]
 

 Id.
 
 at 615.
 

 [9]
 

 731 N.E.2d 123, 128-30 (N.Y. 2000).
 

 [10]
 

 672 N.W.2d 431, 441-42 (N.D. 2003).
 

 [11]
 

 Foley,
 
 731 N.E.2d at 128;
 
 Backlund,
 
 672 N.W.2d at 442.
 

 [12]
 

 Foley,
 
 731 N.E.2d at 129.
 

 [13]
 

 Id.
 

 [14]
 

 Backlund,
 
 672 N.W.2d at 441.
 

 [15]
 

 Id.
 
 at 442.
 

 [16]
 

 366 F.3d 705, 721 (9th Cir. 2004).
 

 [17]
 

 Id.
 

 [18]
 

 Sierra Glass & Mirror
 
 v.
 
 Viking Industries,
 
 107 Nev. 119, 122, 808 P.2d 512, 514 (1991).
 

 [19]
 

 Edgar v. Mite Corp.,
 
 457 U.S. 624, 640 (1982) (quoting
 
 Pike
 
 v.
 
 Bruce Church, Inc.,
 
 397 U.S. 137, 142 (1970)).
 

 [20]
 

 Foley,
 
 731 N.E.2d at 133.
 

 [21]
 

 State v. Snyder,
 
 801 N.E.2d 876, 887 (Ohio Ct. App. 2003).
 

 [22]
 

 Backlund,
 
 672 N.W.2d at 438.
 

 [23]
 

 Foley,
 
 731 N.E.2d at 132-33;
 
 Snyder,
 
 801 N.E.2d at 886-87;
 
 Backlund,
 
 672 N.W.2d at 438.
 

 [24]
 

 Backlund,
 
 672 N.W.2d at 437-38 (citations omitted) (quoting
 
 People
 
 v.
 
 Hsu, 99
 
 Cal. Rptr. 2d 184, 190 (Ct. App. 2000)).
 

 [25]
 

 Foster
 
 v.
 
 State,
 
 116 Nev. 1088, 1091, 13 P.3d 61, 63 (2000) (citations omitted).
 

 [26]
 

 Id.
 
 at 1093, 13 P.3d at 64.
 

 [27]
 

 Id.
 
 (quoting jury instruction with approval).
 

 [28]
 

 366 F.3d 705, 718-19 (9th Cir. 2004).
 

 [29]
 

 NRS 193.017 defines “knowingly” as follows: “‘Knowingly’ imports a knowledge that the facts exist which constitute the act or omission of a crime, and does not require knowledge of its unlawfulness. Knowledge of any particular fact may be inferred from the knowledge of such other facts as should put an ordinarily prudent person upon inquiry.”
 

 [30]
 

 The criminal complaint reads in pertinent part: “whom the said defendant reasonably believed was a female child of the age of 14 years; further, whom
 
 *960
 
 the said defendant reasonably believed was under the age of 16 years; and finally whom the said defendant reasonably believed was at least 5 years younger than the said defendant.”
 

 [31]
 

 Meek, 366
 
 F.3d at 722.
 

 [32]
 

 Id.
 
 at 719.
 

 [33]
 

 State of Nevada v. Washoe County, 6
 
 Nev. 104, 107 (1870) (republished as 5-6-7 Nev. 444, 446).
 

 [34]
 

 Latterner
 
 v.
 
 Latterner,
 
 51 Nev. 285, 290, 274 P. 194, 195 (1929).
 

 [35]
 

 Mangarella v. State, 117
 
 Nev. 130, 134, 17 P.3d 989, 992 (2001) (citing
 
 State v. Wheeler,
 
 23 Nev. 143, 152, 44 P. 430, 431-32 (1896)).
 

 [36]
 

 Id.
 
 at 134, 17 P.3d at 991-92;
 
 see also U.S. v. Gonzalez-Mendez,
 
 150 F.3d 1058, 1060 (9th Cir. 1998).
 

 [37]
 

 We note that similar luring statutes in other states permit enforcement by police sting operations by either identifying intended victims with language such as “a person the adult believes to be a minor,”
 
 see, e.g.,
 
 N.D. Cent. Code § 12.1-20-05.1(2) (Supp. 2005); W. Va. Code Ann. § 61-3C-14b (LexisNexis 2005), or by including an express provision that it is not a defense that the intended victim was a law enforcement officer posing as a minor,
 
 see, e.g.,
 
 Ariz. Rev. Stat. Ann. § 13-3554(B) (Supp. 2005); N.M. Stat. § 30-37-3.2(B) (Supp. 2006). Some state statutes use both methods,
 
 see, e.g.,
 
 Idaho Code Ann. § 18-1509A(1), (3) (2004); Ohio Rev. Code Ann. § 2907.07(A), (C)(2) (LexisNexis 2004); Utah Code Ann. § 76-4-401(1), (2) (2003).
 

 [38]
 

 Carl
 
 v.
 
 State,
 
 100 Nev. 164, 165, 678 P.2d 669, 669 (1984) (holding that conviction requires “proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . charged”).
 

 [39]
 

 We do not address that portion of NRS 201.560(1), which criminalizes an “attempt” to violate the provisions of the statute due to the fact that the indictment in this case did not allege that Colosimo attempted to commit the crime charged.