# In the Matter of John Davidson, Attorney at Law.

No. 3480

November 5, 1947.                     186 P.2d 354.

*Samuel Platt,* of Reno, for Petitioner.

*Harlan L. Heward,* of Reno, Representative of Board of Governors of the State Bar.

## OPINION

By the Court, HATTON, District Judge:

This matter is brought before this court by the petition of the defendant for a review and reversal of the findings and recommendations of the local administrative committee of the state bar of Nevada for the county of Washoe and of the board of governors of the state bar of Nevada in a proceeding in which the defendant was charged with unethical conduct as an attorney at law.

The said proceeding resulted in the following findings and recommendations by the board of governors:

"FINDINGS

"1. The Board of Governors of the State Bar of Nevada find that the said accused, John Davidson, did,

in Reno, Nevada, on July 15, 1946, pay the sum of $25 to one Peter James Howton Rogers for forwarding a divorce client to said accused, and that said accused remunerated said Peter James Howton Rogers for soliciting and obtaining professional employment for said accused, and that said accused did directly share with an unlicensed person, to-wit, Peter James Howton Rogers, compensation arising out of and incidental to professional employment.

"2. The Board of Governors find that said accused, John Davidson, did, in Reno, Nevada, on July 17, 1946, pay the sum of $25 to one Peter James Howton Rogers for forwarding a divorce client to the said accused, and that said accused remunerated said Peter James Howton Rogers for soliciting and obtaining professional employment for said accused, and that said accused did directly share with an unlicensed person, to-wit, said Peter James Howton Rogers, compensation arising out of and incidental to professional employment.

## "RECOMMENDATIONS

"That the Board of Governors of the State Bar of Nevada respectfully recommend to the Supreme Court of the State of Nevada that the accused, John Davidson, be suspended for a period of six months on Count 1 and be suspended six months on count 2, both of said counts to run concurrently, and until further order of the Court; that during the period of suspension of accused, John Davidson, that he be restrained from the practice of law, either directly or indirectly, until he be reinstated by an order of the Supreme Court."

The local administrative committee had recommended suspension of one year on each count, to run consecutively. Thus the board of governors, in effect, reduced the suspension from two years to six months.

To the defendant's petition for review the state bar filed its answer. Arguments were duly presented and the matter submitted for decision.

In the proceeding before the local administrative committee, the first witness called on behalf of the state bar was Claude J. Cormier. The witness testified that he was a deputy sheriff assigned to the office of the district attorney as a special investigator; that at the request of the chairman of the local administrative committee for Washoe County he ascertained that the defendant had filed in the office of the clerk of the district court for Washoe County, during the period from January 2 to December 31, 1945, 253 divorce cases, and in the period from January 2 to July 24, 1946, 191 cases. The witness further testified that he had heard, as a matter of rumor, that the defendant had been connected with pay-offs to laymen in divorce cases and that he had reported such rumors to the chairman of the local administrative committee. Peter James Howton Rogers testified on behalf of the state bar. He testified, in substance, that, at the request of the chairman of the local administrative committee, he agreed to assist the latter in an investigation of possible unethical practices on the part of certain lawyers; that on July 15, 1946, he called on the defendant and the latter agreed to "deal" with him in the matter of handling divorce cases; that pursuant to this understanding he took to defendant's office one Betty Bar who, for the occasion, used the name of Jean Wilson; that after the latter had an interview with the defendant, the witness took her from the office, at which time the defendant requested him to come back around three or four o'clock; that he returned at three o'clock, at which time the defendant paid him $25; that no amount had been stipulated between them; that he mentioned to the defendant that he had found the woman a place to stay, that he had located her at Washoe Pines; and that the witness and defendant had no discussion concerning taxi fare. The witness further testified, in substance, that on July 17, 1946, he took to the defendant's office one Gladys Petrie who, for the occasion, used the name of H. Gertrude Porter; that after the latter

had an interview with defendant, the witness took her from the office; that fifteen or twenty minutes later he returned to defendant's office and again received $25, and that, upon his leaving, the defendant said, "Leave your hat and leave your badge off; I don't want people to see taxi drivers coming up to my office." The witness testified that nothing was said about a loan. Harlan L. Heward, chairman of the local administrative committee for Washoe County, testified that, with the authorization of said committee, he arranged with the witness Rogers for his visits to the office of the defendant which are referred to in the testimony of Rogers. Mr. Davidson, the defendant, testified, in substance, that on July 15, 1946, the witness Rogers brought to his office the said Jean Wilson; that he had never seen Rogers before; that Rogers inquired of him as to where he might take prospective divorce clients for places of residence, saying that he, Rogers, had had trouble with some of the attorneys who sought to make a charge for taking or referring persons to places where they might reside, and that thereupon he gave Rogers a number of addresses; that Rogers came in later and brought with him a lady and introduced her to the defendant; that he talked with her and charged her $250 and that she paid $100 on account; that Rogers came back later and said he had to take the lady to Washoe Pines and was entitled to $25 for taxi fare, and that he gave Rogers the $25. The defendant further testified that on the 16th or 17th, Rogers brought to his office the said H. Gertrude Porter and introduced her; that he talked with Mrs. Porter and that she paid him $100 on account; that Rogers came back later and said, "How about a fee for me in this case?"; that he, defendant, said, "I do not pay commissions on divorces"; that Rogers said, "I need some money," and that he loaned him $25 until his next payday, and directed his secretary to "mark on my book I am giving this man $25.00 as a loan," and said to Rogers, "I don't want any taxi-cab drivers in this office." Asked why he loaned the money to Rogers, defendant

replied, "He asked for it, actually, he said he needed it." George E. Johnson, a witness for defendant, testified that he kept a drawer filing case in the office of defendant, in the outer, or reception, room, and that on July 17, 1946, he went there to place some records in the file, on which occasion the defendant came from the inner room and said, "Marge, I am loaning this fellow $25.00; take his name and address, and I don't want any damn taxi driver hanging around this office." Marge Hanson, Mr. Davidson's secretary, testified, in substance, that on July 17, 1946, the said Mrs. Porter came to the office and was introduced to the defendant by Rogers; that after her departure Rogers came back alone and went into the inner office and was there about two minutes, whereupon defendant opened the door and said, "I am loaning this Taxi-driver $25.00; put it down in the book"; that she entered on the book, "Loaned taxi-driver $25.00"; that defendant did not ask her to get the taxi driver's name; that she could not see the taxi driver, he being in the inner office room, that defendant apparently spoke to him, and that she had no knowledge as to when he left by defendant's private door. Upon the closing of the testimony taken before the local administrative committee, the defendant, on his own behalf, presented his argument as to the merits of the case. The argument was taken down by the reporter in attendance, and a copy thereof, duly certified by the reporter, was admitted in evidence. (Transcript of Proceedings before the Board of Governors, page 40.) In the course of his argument, the defendant said: "I purposely made this suggestion of a loan so I wouldn't be in a position of being charged with giving him a commission." In his testimony, he stated, in substance, that he instructed his secretary to make a memorandum of the transaction, "the fact that I had made a loan, that she could testify to the fact that I had done it." The witness Rogers testified that the taxicab fare from any point in downtown Reno to Washoe Pines, being 25 miles, at 30 cents a mile, amounted to $7.50. On the examination of the

defendant by the chairman of the local committee, the chairman stated, "The regular rate to Washoe Pines is $10.00," to which defendant replied, "I didn't know that."

■ The first ground for reversal set forth in the petition and urged upon the argument is that the entrapment of the defendant was unfair and contrary to public policy and that the evidence so procured should have been disregarded by the local committee and by the board of governors and should be disregarded by this court. The general rule on the subject of entrapment, as shown by the weight of authority, is stated in the article on Criminal Law in 22 C.J.S., sec. 45, as follows:

"One who is instigated, induced, or lured by an officer of the law or other person, for the purpose of prosecution, into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of entrapment.' Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had the requisite criminal intent."

The section referred to contains the following further statements, with supporting citations:

"An officer may, when acting in good faith with a view to detecting crime, make use of deception, trickery, or artifice; and so it is not a defense that decoys were used to present an opportunity for the commission of the crime or that detectives or others feigning complicity in the act were present and apparently assisting in its commission."

■ From the proofs above set forth, we take the view that the unethical intention and act of the defendant, in making the two payments to Rogers, was not unduly induced or suggested by Rogers and that the defense of entrapment is not applicable in this case.

The second ground for reversal urged on behalf of the defendant is that the board of governors abused its

discretion in denying the defendant a trial de novo after admitting in evidence the affidavit of G. L. Griffith, offered on behalf of defendant as newly discovered evidence reflecting on the credibility of the witness Rogers. The affidavit referred to recites that Rogers was in the employ of the Yellow Cab Company, of which Mr. Griffith was the manager, in the month of April 1946, and states further as follows:

"He came to me on Saturday, April 27th, 1946, at about noon, stating that he had a party to drive to San Francisco, and that he had received Seventy-five ($75.00) Dollars as payment for the fare. After considerable discussion, I agreed to let him go. Rogers did not show up until Monday, 8 P.M., April 29th, 1946, and when questioned by me he gave me a cock-and-bull story about the car breaking down, and he had to take it to a garage and they had the parts all spread over the garage and therefore he couldn't return to Reno any sooner.

"I knew at the time that his statement was untrue, so I then asked him for the seventy-five dollars for the trip, and he said the customer had lost it gambling. In order to collect this money it is necessary for me to deduct it from wages which were due him. He then broke down and said, 'Well, I guess my story doesn't sound so good' after which he severed connections with our company.

"He will not be employed with our company at any time."

■■ The granting or refusal by the board of governors of a hearing de novo lies within the discretion of the board. Sec. 32, State Bar Act, Comp.Laws, sec. 571. Rule XXVII of the rules of procedure of the state bar requires that the proceedings before the local committee shall be simple and informal, but thorough, with the object of ascertaining the truth concerning the matters under investigation. The affidavit of Griffith, above referred to, relates to a particular transaction which, the defendant urges, tends to impeach the credibility of Rogers. The general rule is that such line of impeachment may be presented only by proof of the general

reputation of the witness for truth and veracity, and not by evidence of particular incidents or transactions. While the board may not have been bound to follow this rule, it did not abuse its discretion in refusing to grant a trial de novo on the strength of the said affidavit, nor was there such abuse in any other matter that we can discern in the record of this proceeding.

■ The third ground for reversal urged by the defendant is that the local administrative committee abused its discretion "by failure to recognize a fundamental constitutional privilege of the accused to be confronted by the witnesses against him." On this point, it was argued that the witness Rogers "was held in reserve" until after the defendant was called and testified. Is it to be inferred that the defendant would have been in a better position to testify had he first heard the testimony of Rogers? The right of an accused to be confronted by the witnesses against him was fully accorded to the defendant. He cross-examined the witness Rogers and had the opportunity to cross-examine the other witnesses as well as the opportunity to resume the witness stand in his own behalf after hearing the testimony of Rogers, had he decided to do so.

The fourth ground for reversal urged for the defendant is that he was denied the presumption of innocence. It is argured for defendant that, having conceived and put into operation the entrapment plan and having later brought charges against the defendant upon the evidence so procured, the local committee thereby placed upon him the burden of proving his innocence. The people of Nevada, through their legislature, by means of the state bar act, have charged the organized bar of the state with certain duties of self-government and self-regulation. With the approval of the supreme court, the bar has the power to formulate and enforce rules of professional conduct for all members of the bar of the state. Section 34 of the state bar act contains the following provision:

"The board, or any local administrative committee

shall, of its own motion and without the filing or presentation of any complaint, or upon any complaint, if a complaint be filed, have power to initiate and conduct investigations of all matters, affecting or relating to the state bar, or its affairs, or the practice of the law, or the discipline of the members of the state bar, or any other matter within the jurisdiction of the state bar, and in the conduct of such investigations shall have power to take and hear evidence touching the matters under investigation." Comp.Laws, sec. 573.

In the present case, and under the authority of the above provision of the statute, the local administrative committee undertook the task of initiating and conducting an investigation of the professional conduct of the defendant. The exercise of this duty did not disqualify the committee to bring the charge against the defendant and hear the evidence bearing thereon, since the statute gives the power not only to initiate and conduct the investigation but also the power to bring the charge and hear the evidence. Under section 35 of the act, Comp.Laws, sec. 574, the rights of the accused, securing to him a fair trial, are set forth. All of these rights were accorded or made available to the defendant. The presumption of innocence, in its practical application, is intended to secure to the accused a fair and impartial trial as well as the benefit of the rule as to the degree of proof required. The presumption relates primarily to the burden of proof. It has been held by this court that, on such a hearing, a higher degree of proof is required than is required to determine questions of fact in the ordinary civil proceeding. Copren v. State Bar, Nev. 183 P.2d 833. While the local committee and the board of governors are empowered to prepare and forward their findings and recommendations, the final application of the rule as to the burden of proof, in this proceeding, rests upon this court. The defendant has not been deprived of the benefit of the rule which accords to an accused person the presumption of innocence.

For a fifth ground for reversal, the defendant urges that he was denied a fair trial in the fact that the "main accusing witness" was specially employed to entrap him and that, as a result of such employment, doubt is cast upon his credibility. On the argument, the point was urged as bearing on the weight to be given by this court to the evidence of the witness Rogers.

The sixth and final point presented in the petition for review is that the evidence does not support the findings of either the local administrative committee or those of the board of governors. A hearing de novo is not sought on this review. The defendant petitioner requests this court to reverse the findings, exonerate the defendant and dismiss the proceeding.

■ We are convinced, from the evidence, that the payment of the sum of $25 by the defendant to Rogers as an alleged discharge of taxicab fare, was intended as and amounted, in substance, to the remuneration of Rogers for soliciting and obtaining professional employment for the defendant. This view would hold even though, as testified to by the defendant, the sum was paid upon a request for taxi fare. No testimony was given by defendant or his secretary that this item was immediately charged against the client. In response to the question, "Did you expect to be reimbursed by the client?", defendant answered, "I have it charged now." Asked if he did not think the client might question it, he replied, "Suppose she did, I was out $25.00, that is all." This attitude, together with the discrepancy between what is shown to be a reasonable and customary charge for the taxi service and the $25 paid, sufficiently shows the intent to remunerate. In his argument before the local committee (Transcript of argument, page 7) the defendant urged that the taxi drivers should be punished, saying, "There is the root of the evil, there is where the policing should start and not with the lawyers." On the contrary, the organized bar is concerned with the ethical attitude and conduct of lawyers. If a

payment to a taxi driver amounts to a remuneration for bringing a client, its unethical character would not be removed by the fact that the payment was made upon the demand of the taxi driver.

With regard to the alleged loan of $25 by defendant to Rogers, there are circumstances which negative the contention that the transaction was, in fact, a loan. The defendant had no acquaintance with Rogers prior to the first call mentioned in the testimony; he did not know his name or his place of residence or employment. For the purpose of the entry in his book, he did not ascertain or direct his secretary to ascertain the name of the taxi driver. Upon his own statement, he suggested that the transaction be given the nature of a loan. This evidently would be after a request for, and in lieu of, an open remuneration. Whether the suggestion was so made to Rogers or the defendant conceived of the loan entry in the book after he had compensated Rogers and the latter had departed, the transaction amounted to a remuneration of Rogers. In the former case, the alleged loan would be a subterfuge to cover remuneration.

Rule III, of the rules of professional conduct of the state bar, provides as follows:

"A member of the State Bar shall not employ another to solicit or obtain, or remunerate another for soliciting or obtaining, professional employment for him; nor shall he directly or indirectly share with an unlicensed person compensation arising out of or incidental to professional employment."

This rule has its roots in the public policy which would prevent the stirring up of litigation and encourage disputants to arrive at peaceful settlements. The pressure of the large volume of divorce cases in Nevada, its lucrative character, the interest of other business enterprises to promote the influx of divorce seekers, the tendency among some practitioners to undertake the handling of a large number of cases to the exclusion of other types of litigation, and the tendency to unethical practices

and irregularities which this pressure induces—these conditions will confront the organized bar of the State with an ever-present problem. That problem is illustrated by this case.

We are satisfied that the local administrative committee and the board of governors were justified, and that this court is now justified, in finding, that in each of the instances mentioned, the defendant remunerated Peter James Howton Rogers in the sum of $25 for soliciting and obtaining for the defendant professional employment.

It is ordered that the defendant be suspended from practicing law in all of the courts of this state for a period of six months from the date of the entry of this order.

EATHER, C. J., having been unable to participate, due to illness, the Governor designated the Honorable WM. D. HATTON, Judge of the Fifth Judicial District, to act in his place.