EVELYN ADAMS AND OLGA BOND, APPELLANTS, v. THE STATE OF NEVADA, RESPONDENT.

No. 4838

November 2, 1965                                   407 P.2d 169

[Rehearing denied December 1, 1965]

*Harry A. Busscher,* of Reno, for Appellants.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, and *Herbert F. Ahlswede,* Chief Criminal Deputy, Washoe County, for Respondent.

## O P I N I O N

By the Court, BADT, J.:

Appellants were jointly tried in the court below upon an amended information charging the felony of attempted abortion. From a judgment of guilty, based upon jury verdict, and from denial of their joint motion for a new trial, appellants here appeal, using a "shotgun" approach by citing at least ten grounds for protest, none of which, we feel, has sufficient weight under the instant facts to merit an extensive discussion. Nevertheless, we shall attempt to handle each separately.

1. Perhaps appellants' most strenuous contention is that they be afforded the defense of entrapment. Suffice that though undercover agents were used, and though they did institute the initial contact with appellants, this is not *alone* what is meant by "inducing" crime or having it "originate in the minds of police officers or their agents." To the contrary, the record here reveals that during the initial contact, which generally is the most crucial point for an analysis of entrapment, undercover agent Francine Paiva only said her "sister" was "in trouble." It was appellant Olga Bond who drew necessary inferences that the "trouble" was an unwanted pregnancy and that the caller sought an abortion. It was appellant Bond who opened the discussion of

money[1] and disclosed the required presence of appellant Evelyn Adams. This is not entrapment. "It is merely the furnishing of an opportunity for the commission of the crime." Wyatt v. State, 77 Nev. 490, 367 P.2d 104. Also see In re Davidson, 64 Nev. 514, 186 P.2d 354; In re Wright, 69 Nev. 259, 248 P.2d 1080.[2] So holding, it is here unnecessary for us to review the pertinence of appellants' having waited to initiate their protest of entrapment until this appeal. Wyatt v. State, supra.

2. Appellants next contend their arrests occurred before any "attempt" had transpired, and that at most their alleged acts constituted mere preparation. We recognize that the critical distinction between "preparation" and "attempt" is, at times, delicate, but this is not one of those times. The record discloses that shortly before the alleged abortion was to be performed, appellant Adams purchased Lysol and petroleum jelly; that she mixed these in a nearby motel room where she instructed her "patient" to remove undergarments and lie, knees raised, upon towels. Then armed with the hideous contraption of a combination oilcan syringe in one hand, Mrs. Adams placed her other hand on the "patient's" knee in an attempt to spread the latter's knees. At this point, arrests occurred. Clearly, appellant Adams' acts had gone well beyond "mere preparation." "[C]ourts should not destroy the practical and common sense administration of the law with subtleties as to what constitutes preparation and what an act done toward the commission of a crime. * * * [G]eneral principles must be applied in each case as nearly as can

[1]Bond: All right, now are you familiar with the price?
Paiva: No, I'm not.
Bond: Well, uh, it all depends. How long is she?
Paiva: Uh, about six weeks.
Bond: Oh, well that will be at least five.

[2]Cf. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, where a prohibition agent, posing as a tourist, three times specifically asked appellant to procure liquor before appellant finally agreed.

be, with a view to working out substantial justice."
State v. Roby, 194 Iowa 1032, 188 N.W. 709.

3. In this vein, the trial court properly instructed
the jury as to the law in attempt. Further, appellants
offered no alternate instruction. State v. Lewis, 59 Nev.
262, 91 P.2d 820.

4. Appellants complain of the court's refusal to
grant a motion for separate trials. NRS 175.205[3] pro-
vides that "When two or more defendants shall be
jointly charged with a criminal offense, they shall be
tried jointly, unless, for good cause shown, the court
shall otherwise direct." Appellants' affidavits asserting
such "good cause" merely stated that one co-defendant
had made "certain statements" prejudicial to the other
and that evidence proper to one co-defendant might
prejudicially affect the other. Neither the statements
nor the evidence was further described. Thus the court
ruled correctly in holding there had been no showing of
"good cause." State v. Jon, 46 Nev. 418, 211 P. 676.

5. The trial court also was correct in permitting the
testimony of Los Angeles police officer Paul LePage as
to a prior arrest of appellant Adams for abortion and
the "tools" seized in a search incident to that arrest. This
was properly admissible as tending to establish motive,
intent, absence of mistake or accident, and a common
scheme or plan. Nester v. State, 75 Nev. 41, 334 P.2d 524.

6. Appellants also complain of instruction 18, given
at the request of their own counsel. Appellants now
protest the instruction was violative of their Fifth
Amendment rights against self incrimination, as applied
to states through the due process clause of the Four-
teenth Amendment. Griffin v. California, 380 U.S. 609,
85 S.Ct. 1229, 14 L.Ed.2d 106. Instruction 18, in its
entirety read:

---

[3]Appellants also rely on an old statute superseded by NRS
175.205.

"It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus, whether or not he does testify rests entirely in his own decision. As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable. In this connection, however, it should be noted that if a defendant does not have the knowledge that he would need to deny or to explain any certain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain such evidence. The failure of a defendant to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt.

"In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the State to prove every essential element of the charge against him, and no lack of testimony on defendant's part will supply a failure of proof by the State so as to support by itself a finding against him on any such essential element."

In Fernandez v. State, 81 Nev. 276, 402 P.2d 38, we took note that not *all* comments as to a defendant's failure to testify constituted reversible error under Griffin. "The distinction appears to be that defendant's failure to testify cannot directly or indirectly be the subject of comment by the prosecution, but a reference to evidence or testimony that stands uncontradicted is acceptable." Also see Poirier v. Board of Dental Examiners, 81 Nev. 482, 406 P.2d 534. Under the instant facts, particularly considering appellants having themselves requested the

instruction,[4] we view instruction 18 as only "referring to evidence or testimony that stands uncontradicted." Note, however, that we do not commend this instruction. It flirts with the very dangers put forth in Griffin v. California, supra.

7.  We also reject appellants' contention that the amended information did not sufficiently allege a crime against the laws of the State of Nevada. The amended information charged appellants used or caused to be used instruments and substances on the body of Beverly Rubio with the intent to produce a miscarriage. NRS 173.090 provides that "[t]he offense charged in any information shall be stated in plain, concise language without prolixity or unnecessary repetition." Further, the information need not strictly pursue the words used in a statute to define a public offense, but other words conveying the same meaning may be used. Ex parte Boley, 76 Nev. 138, 350 P.2d 638.

8.  Equally without merit is appellants' contention that the court erred in refusing to command disclosure of the identity of an informer. In this case, the informer was completely irrelevant to appellants' defense. He (or she) merely had originally informed police that an abortion ring might be in operation at Mrs. Bond's home in Crystal Bay. The police then began their own observation leading to the undercover plan which resulted in the arrests. Appellants were not on trial because of the informer. They were on trial because of acts performed in the presence of undercover agents, who were available and thoroughly cross-examined throughout the trial. Cf. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, with United States v. Rugendorf, 316 F.2d 589.

9.  A foundation clearly was laid for introduction of tape-recorded telephone conversations. The prosecution complied in all respects with the requirements for such

---

[4] See Shields v. United States, 17 F.2d 66 (3 Cir. 1927) ; but cf. People v. Keelin, 136 Cal.App.2d 860, 289 P.2d 520.

foundation set forth in commendable length in Solomon, Jr., Inc. v. Edgar, 92 Ga.App. 207, 88 S.E.2d 167. See also Annot., 58 A.L.R.2d 1029.

10. Finally, we consider the point too well settled to discuss, but pregnancy of the "patient" is not necessary for the crime of abortion. NRS 201.120; Wyatt v. State, 77 Nev. 490, 367 P.2d 104.

As none of the assignments of error has merit, the judgment must be affirmed and it is so ordered.

THOMPSON, J., and ZENOFF, D. J., concur.

MCNAMEE, C. J., being incapacitated, the Governor assigned Honorable David Zenoff of the Eighth Judicial District to sit in his place.