140 Nev., Advance Opinion 70

IN THE SUPREME COURT OF THE STATE OF NEVADA

JESUS ALBERTO MARTINEZ, JR.,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 86842

**FILED**

NOV 07 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of attempted abuse or neglect of a child involving sexual exploitation and soliciting a child for prostitution. Second Judicial District Court, Washoe County; Scott N. Freeman, Judge.

*Affirmed.*

Richard F. Cornell, P.C., and Richard F. Cornell, Reno,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Jennifer P. Noble, Chief Appellate Deputy District Attorney, Washoe County,
for Respondent.

_____

BEFORE THE SUPREME COURT, HERNDON, LEE, and BELL, JJ.

*OPINION*

By the Court, HERNDON, J.:

State and federal law enforcement agents conducted a "reverse sting" operation in which undercover officers created online profiles posing

as sex workers to effectuate arrests of those seeking commercial sex with minors. As a result of the reverse sting operation, law enforcement arrested appellant Jesus Alberto Martinez, Jr., and the State charged him with attempted abuse or neglect of a child involving sexual exploitation and soliciting a child for prostitution. Following a jury trial, Martinez was convicted on both charges.

Martinez challenges the conviction on several grounds. None warrant reversal. But we take this opportunity to address the law at issue in this case. Chiefly, we clarify the law on entrapment and the importance of "initial contact," as described in *Adams v. State*, 81 Nev. 524, 407 P.2d 169 (1965). We also adopt the nonexhaustive six-factor test outlined in *United States v. Black*, 733 F.3d 294 (9th Cir. 2013), for evaluating under the totality of the circumstances whether the government's conduct was outrageous and violative of due process. We conclude Martinez has not shown reversible error with regard to the jury instructions provided on entrapment or outrageous governmental conduct violative of due process, and we affirm the judgment of conviction.

## FACTS

In 2020, state and federal law enforcement agencies conducted a reverse sting operation in Reno, posing as sex workers to target illegal sex trafficking activity. The asserted goal of the sting "was to combat the demand" for commercial sex with minors by reducing the supply of "purchasers looking to solicit" those minors. To prepare for this sting, law enforcement agents posted a test advertisement on an adult escort website. The advertisement included a profile of a model posing as a sex worker and purportedly was designed to mimic that of an underage sex worker. The photos posted with the advertisements, however, were of an adult obtained from a confidential source, and the sex worker's advertised age was 21.

Martinez texted the phone number listed with the test advertisement. Consistent with the reverse sting, the recipient of the text was actually Detective Wesley Leedy of the Reno Police Department's Regional Human Exploitation and Trafficking Unit. Some conversation about rates and services followed. Leedy asked Martinez if he was affiliated with law enforcement. Martinez answered no, and then Leedy claimed to be 17 instead of 21, prompting Martinez to ask whether he was "going to have any problem." After some back and forth in which Martinez was hesitant to send a picture of himself and acknowledged that he "can get in a lot of trouble because of ur age," Leedy ended the conversation. At trial, Leedy explained he did so because the sting was still in the test phase and not fully operational.

Martinez reached out to the same phone number roughly a week later. By this time, the sting was in effect, and the law enforcement agents had posted decoy advertisements across various escort websites. Martinez texted, "I seen ur post online and I was wondering if your available." Leedy agreed to meet, adding, "As long as ur good with me being 17 yrs old." Martinez asked whether he was speaking to someone "affiliated with any law enforcement" or "undercover." Leedy responded, "No hun we went thru this the other night u don't remember?" Martinez answered that he wanted to make sure and asked for a picture that was not online. Leedy sent a picture. Martinez asked when they could meet, and the two discussed what services Martinez would purchase. After confirming prices, Leedy asked, "So u gonna pick me up and not be weird about my age? Guys keep being weird with me." Martinez responded, "I'm not going to be weird about it unless u are," and "maybe you shouldn't tell them. Lol but I'm trying to have a good time." Leedy sent an address to a location that was supposedly

the sex worker's "grandmas house"—a rental home where law enforcement waited for Martinez's arrival. Upon arrival, Martinez was arrested. He had $100 in his car's cup holder, which was the price Leedy had confirmed with Martinez for sex without a condom.

The State charged Martinez by information with attempted abuse or neglect of a child involving sexual exploitation and soliciting a child for prostitution. Before trial, Martinez filed a motion to dismiss the information and a motion to compel the identity of the woman from the photos used in the advertisements. The district court denied both motions. Among other evidence, the State introduced at trial compilations of both Martinez's texts and the pictures sent back and forth between Martinez and Leedy. A jury ultimately convicted Martinez on both counts.

On appeal, Martinez seeks the reversal of his conviction on the theory that the government's conduct in the case was so outrageous that it violated due process. Martinez alternatively contends that reversal and remand for a new trial is warranted because the district court provided improper jury instructions on entrapment, the facts do not support a charge for attempted abuse or neglect of a child involving sexual exploitation, the evidence was insufficient on the solicitation charge, the court violated his confrontation rights by denying his motion to compel the identity of the person depicted in the ad and photograph, and the cumulative effect of the errors below violated his due process right to a fair trial.

## DISCUSSION

*The district court's jury instructions regarding Martinez's entrapment defense do not compel reversal*

Martinez challenges Jury Instruction Nos. 27, 28, and 29, which all relate to his entrapment defense. District courts have "broad discretion to settle jury instructions." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d

Supreme Court
OF
Nevada

(O) 1947A

582, 585 (2005). We generally review the district court's decisions on instructing the jury "for an abuse of that discretion or judicial error." *Id.* When challenges to jury instructions are unpreserved by the failure to object, we will reverse only if the defendant points to a plain error that affected their substantial rights by causing actual prejudice or a miscarriage of justice. *Martinorellan v. State*, 131 Nev. 43, 49, 343 P.3d 590, 593 (2015). Whether a jury instruction correctly recites the law, however, is a legal question subject to de novo review. *Kassa v. State*, 137 Nev. 150, 156, 485 P.3d 750, 757 (2021). Even then, legal error in an instruction warrants reversal only if "a different result would be likely, absent the contested instruction." *Id.* We begin with Jury Instruction No. 29, which Martinez claims failed to correctly recite the law.

*The district court erred in instructing the jury on the importance of "initial contact" in an entrapment defense but the error was harmless*

Entrapment consists of "two elements: (1) an opportunity to commit a crime is presented by the state (2) to a person not predisposed to commit the act." *Miller v. State*, 121 Nev. 92, 95, 110 P.3d 53, 56 (2005) (internal quotation marks omitted). The defendant bears the burden under the first prong to prove the State's instigation of the criminal plan. *Foster v. State*, 116 Nev. 1088, 1091, 13 P.3d 61, 63 (2000). If proven, the burden shifts to the State under the second prong to prove the defendant was predisposed to commit the crime. *Id.* In *Foster*, this court recognized that "the most important" factor to predisposition "is whether the defendant demonstrated reluctance which was overcome by the government's inducement." *Id.* at 1093, 13 P.3d at 64. Years before *Foster*, however, we observed in *Adams* that initial contact "generally is the most crucial point for an analysis of entrapment." *Adams*, 81 Nev. at 524, 407 P.2d at 171.

Martinez challenges language in Instruction No. 29, apparently stemming from *Adams*, that provided in part, "Initial contact is generally the most crucial point for an analysis of entrapment." He asserts that this instruction was given in error because this language, though pulled from Nevada caselaw, "is nowhere mentioned in the major entrapment cases of more recent years." Martinez adds that this instruction vitiates his entrapment defense because initial contact by the defendant is unavoidable in reverse sting cases. Martinez further argues that this instruction conflicted with language in Instruction No. 28, which correctly recites the law on entrapment, stating, "the most important [predisposition factor] is whether the defendant demonstrated reluctance which was overcome by the government's inducement." He claims this combination of instructions may have confused the jury and this error, when considered with other trial errors, warrants reversal of his conviction.

In cases decided after *Adams*, this court has applied a "subjective approach," which centers on predisposition. *DePasquale v. State*, 104 Nev. 338, 340, 757 P.2d 367, 368 (1988); *see also Foster*, 116 Nev. at 1094, 13 P.3d at 65 ("When a defendant raises the defense of entrapment, he places his predisposition to commit the crime in issue."). Thus, facts tending to show the defendant's predisposition, rather than facts showing who made initial contact, are the more important part of the entrapment analysis. And initial contact is not coextensive with predisposition, even if initial contact may provide evidence of predisposition. *See, e.g., Miller*, 121 Nev. at 97, 110 P.3d at 57 (finding no entrapment where the defendant "initiated the conversation and engaged in the larceny for profit"). In other cases, it might play a lesser role or no role at all. *See Foster*, 116 Nev. at 1093, 13 P.3d at 64 (endorsing five nonexhaustive factors relevant to

evaluating predisposition, where one of the five factors included "who first suggested the criminal activity").

To be sure, *Adams* itself is illustrative. There, the defendant claimed entrapment because the undercover officer approached her first. We clarified that such contact "is not *alone* what is meant by inducing crime or having it originate in the minds of police officers or their agents," given what transpired "during the initial contact." *Adams*, 81 Nev. at 526, 407 P.2d at 171 (internal quotation marks omitted). During that initial contact, the defendant, not the undercover officer, suggested the criminal act. *Id.* at 526-27, 407 P.2d at 171. Thus, the facts did not demonstrate entrapment, but rather a mere furnishing of the opportunity to commit the crime. *Id.* at 527, 407 P.2d at 171.

In this case, the district court properly instructed the jury on the entrapment defense, including the two elements of the defense and the parties' burdens as to each element. The court also properly instructed the jury on five factors relevant to considering the predisposition element, explaining that "the most important" of those nonexhaustive factors is "whether the defendant demonstrated reluctance which was overcome by the government's inducement." While the court's instruction on the importance of "initial contact" is consistent with *Adams*, we agree with Martinez that this isolated statement from *Adams* overstates the law of entrapment. *Adams* discussed initial contact as the relevant timeframe to determine whether the elements of entrapment were present. *Id.* at 526, 407 P.2d at 171. But here, the district court instructed the jury that initial contact was "the most crucial point for an analysis of entrapment," without this additional context from *Adams*. The instruction was misleading

because it suggested that initial contact alone drives the entrapment analysis. Therefore, the court erred in giving the instruction.

Still, we are not persuaded that this error is reversible. On the facts here, we cannot say "a different result would be likely" had the district court omitted this instruction. *Kassa*, 137 Nev. at 156, 485 P.3d at 757. Nor are we persuaded that, as Martinez contends, the instruction vitiated an otherwise viable entrapment claim on these facts. Namely, while Martinez initially contacted the sex worker on the understanding he was contacting an adult, he reached out a second time after being told the sex worker's age was 17. As to predisposition, the evidence does not demonstrate that Martinez was reluctant to commit the crime and the government overcame that reluctance through inducement tactics. Instead, it shows that after Leedy informed Martinez that the sex worker was a minor, Martinez's only hesitation was to confirm that the transaction did not involve law enforcement. Overall, the text messages show that Martinez willingly solicited a sex worker that he believed was 17—he was neither reluctant nor overcome by law enforcement's inducement. A different result—a successful entrapment claim—is not likely based on that conduct. *Id.* For the same reasons, we are not persuaded by Martinez's contention that reversal is warranted because the *Adams* instruction on initial contact conflicted with the *Foster* instruction on predisposition, thereby confusing the jury. Therefore, we conclude that the error was harmless.

*The district court did not violate Martinez's right to present a defense in providing two other jury instructions on entrapment*

Martinez also argues that two other jury instructions were not tailored to his theory of the case, thereby violating his constitutional "right to present a complete defense." He argues that Instruction No. 27 did not specify that predisposition "is measured against the charged offense," as

SUPREME COURT
OF
NEVADA

(O) 1947A

opposed to just any offense. And he argues that Instruction No. 28, which recited the list of nonexhaustive factors relevant to predisposition as outlined in *Foster*, should have included another factor, specifically, "whether the defendant has ever attempted to abuse a child by way of sexual exploitation or previously solicited a minor for prostitution."

Martinez did not object and preserve a challenge to Instruction No. 27. Therefore, plain-error review applies. Plain error does not exist here, as the district court provided instruction on Martinez's entrapment theory that recited almost the precise language used from our decisions in *Foster* and *Miller*, defining the two elements of entrapment. Moreover, Instruction No. 27 (and Instruction No. 28) focused on the crimes charged and not just *any* crime when specifically discussing predisposition. Instruction No. 27 referred to a "person not predisposed to commit *the* act" and instructed that "[e]ntrapment is a complete defense to *the crimes charged in the Information*," thus providing the context of the two charged offenses relative to Martinez's entrapment defense. (Emphases added.) The same result is true of Martinez's challenge to Instruction No. 28; although Martinez objected and preserved a challenge to this instruction, we conclude the district court did not err by giving an instruction that recited *Foster*'s predisposition factors verbatim, one of which is "[t]he character of the defendant." Moreover, Instruction No. 28 provided that those five factors "may be considered" but the jury is not limited to them when considering predisposition.

No doubt, Martinez was entitled to jury instructions on entrapment on the evidence here. *See Hoagland v. State*, 126 Nev. 381, 386, 240 P.3d 1043, 1047 (2010) (explaining that defendants are entitled to jury instructions on their theory of the case if there is supporting evidence,

"regardless of whether the evidence is weak, inconsistent, believable, or incredible"). He received those instructions. *See Crawford*, 121 Nev. at 748, 121 P.3d at 585 (concluding that no abuse of discretion occurred when the instruction "correctly stated the law and summarized the statutory definition of" the crime at issue). We perceive no error or abuse of discretion by the district court in excluding the extra language Martinez claims he was entitled to, which merely summarized how he believed predisposition applied here. *See, e.g., Batson v. State*, 113 Nev. 669, 675-76, 941 P.2d 478, 482 (1997) (explaining that criminal defendants are entitled to instructions that correctly state the law). Nor are we persuaded, and nor does Martinez cogently argue, that our existing caselaw underlying the challenged instructions is incorrect or underinclusive. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court."); *LaChance v. State*, 130 Nev. 263, 277 n.7, 321 P.3d 919, 929 n.7 (2014) (declining to address argument raised for the first time in reply brief). And if the district court had given instructions emphasizing how predisposition concerns the crime charged and must exist before the governmental instigation, it is not likely the jury would have arrived at a different result. *Kassa*, 137 Nev. at 156, 485 P.3d at 757. Therefore, we conclude that the district court did not abuse its discretion during the settling of jury instructions.

*The district court did not err by denying Martinez's motion to dismiss the information based on outrageous government conduct*

Martinez argues that law enforcement committed outrageous government conduct during the reverse sting operation in violation of his due process rights. On this basis, he seeks the reversal of his conviction and argues the district court erred in denying his motion to dismiss the

information. He relies heavily on *United States v. Lofstead*, 574 F. Supp. 3d 831 (D. Nev. 2021), where the United States District Court for the District of Nevada found outrageous government conduct arising out of the same reverse sting operation but with a different criminal defendant and different circumstances.

Typically, this court reviews the district court's decision not to dismiss an information for an abuse of discretion. *Cf. Guerrina v. State*, 134 Nev. 338, 347, 419 P.3d 705, 713 (2018) (stating that the denial of a motion to dismiss an indictment is reviewed for an abuse of discretion). When the motion asserts outrageous governmental conduct, however, courts review the district court's decision de novo. *United States v. Pedrin*, 797 F.3d 792, 795 (9th Cir. 2015); *State v. Hoverson*, 710 N.W.2d 890, 895 (N.D. 2006) ("Whether the government's conduct is so outrageous that it bars prosecution is a question of law, fully reviewable on appeal.").

An outrageous-government-conduct challenge is of constitutional magnitude. The United States Supreme Court has recognized that an outrageous-government-conduct defense could exist where "the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431-32 (1973). Other jurisdictions have explained that the term applies to conduct that "shocks the conscience" and "falls within the narrow band of the most intolerable government conduct," *United States v. Morse*, 613 F.3d 787, 792-93 (8th Cir. 2010) (internal quotation marks omitted), or "is so grossly shocking and so outrageous as to violate the universal sense of justice," *United States v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011)

(internal quotation marks omitted). Criminal charges based on outrageous governmental conduct are subject to dismissal. *Morse*, 613 F.3d at 792-93.

The United States Court of Appeals for the Ninth Circuit has outlined six factors "relevant to whether the government's conduct was outrageous." *United States v. Black*, 733 F.3d 294, 303 (9th Cir. 2013). The nonexhaustive six-factor test looks to

> (1) known criminal characteristics of the defendants; (2) individualized suspicion of the defendants; (3) the government's role in creating the crime of conviction; (4) the government's encouragement of the defendants to commit the offense conduct; (5) the nature of the government's participation in the offense conduct; and (6) the nature of the crime being pursued and necessity for the actions taken in light of the nature of the criminal enterprise at issue.

*Id.* Though these factors "do not constitute a formalistic checklist," *id.* at 304, we believe they are instructive in evaluating outrageous government conduct under the totality of the circumstances.

Adopting and applying the *Black* factors here, we conclude that the facts do not support Martinez's outrageous-government-conduct defense and that the district court properly denied Martinez's motion to dismiss. This case does not showcase conduct "so outrageous" or "grossly shocking" as to warrant dismissal. *Russell*, 411 U.S. at 431-32; *Stinson*, 647 F.3d at 1209 (internal quotation marks omitted).

The first *Black* factor—the "known criminal characteristics of the defendants"—is a close call. 733 F.3d at 303. That factor considers facts such as "whether a defendant had a criminal background or propensity the government knew about when it initiated its sting operation." *Id.* at 304. Arguably, this factor favors Martinez since the record does not indicate that the government knew about a particular criminal background or propensity

involving Martinez when it first planned its sting operation. On the other hand, it was aware of Martinez's propensity to solicit sex workers when it put the sting operation in effect based on Martinez's initial phone contact in response to the test advertisement. And it was aware of his specific willingness to solicit sex from a minor when Martinez initiated the second text conversation with Leedy. While the State claims that the website Martinez used is known for advertising child prostitution, Martinez initially reached out to a profile that claimed to depict a 21-year-old. However, after law enforcement ended the first text conversation with Martinez and did not attempt any follow-up, Martinez reached out again to the profile after being aware that it was purported to be that of a minor.

The second *Black* factor—whether the government had individualized suspicion or a "reason to suspect" Martinez in particular—initially seems to favor Martinez, as no such evidence exists here. *Id.* Individualized suspicion of a defendant's wrongdoing, however, is not an absolute requirement for a legitimate undercover investigation. *Id.* In that regard, even when the government does not suspect a particular individual, the government may focus "on a category of persons it had reason to believe were involved in the type of illegal conduct being investigated." *Id.* There was evidence here that law enforcement chose the adult escort website because it had been used for sex trafficking minors even though the website requires that any advertisement be of an adult.

The third factor considers "the government's role in creating the crime," which cuts both ways here. *Id.* at 303. Law enforcement initiated the sting, created adult profiles, and changed the age of the decoy sex worker to 17 in conversation with Martinez. But Martinez was the one who reached out to the sex worker on his own initiative, and twice he agreed to

meet the decoy sex worker after learning the purported minority age of that sex worker. Moreover, courts have recognized, as is often true of sting operations, that such "creation of the opportunity to commit an offense, even to the point of supplying defendants with materials essential to commit crimes, does not exceed due process limits." *United States v. Bout*, 731 F.3d 233, 238 (2d Cir. 2013) (internal quotation marks omitted).

Any facts relevant to the fourth factor—the government's encouragement of Martinez—also do not rise to the level of "pressure or coercion" indicative of outrageous government conduct. *Black*, 733 F.3d at 308. The texts between Leedy and Martinez lack any indication of "inappropriate activity, threats or coercion to encourage [Martinez] to engage in" sexual acts with a minor. *Id.* Martinez also did not show reluctance after learning of the sex worker's minority age. Although Martinez points to his "hesitation" after learning the decoy was a minor, he did not hesitate or express concern about engaging in sexual acts with a minor but instead merely asked for reassurance that he was not speaking to law enforcement.

Balanced alongside the final two factors—the government's participation in the crime, of which there was little outside the creation of the sting operation, and the nature of the serious issues of sex trafficking underlying the actions taken in the reverse sting operation, which definitively favors the State—we cannot say this case showcases outrageous government conduct violative of due process. *Id.* at 308-10. Although Martinez argues that the cumulative conduct here is outrageous as recognized in *Lofstead*, we disagree. Every individual will have a different interaction with law enforcement, so each case must be evaluated on the basis of its own facts and circumstances. And the facts here are not on par

with those in *Lofstead*. In *Lofstead*, law enforcement agents engaged in significant encouragement and coaxing over a roughly three-hour period after the defendant expressed concerns about the decoy's real age and the legality of the transaction. 574 F. Supp. 3d at 854-55. Here, the State played the part without coercing or encouraging Martinez. In particular, Martinez was a generally willing purchaser of commercial sex, who pursued the transaction after learning that the decoy was a minor without Leedy coaxing him to do so. Therefore, under the totality of the circumstances as aided by applying the *Black* factors, we conclude there was no error in the district court's rejection of Martinez's outrageous-government-conduct argument and its resulting order denying Martinez's motion to dismiss the charges.

*The district court did not err by denying Martinez's motion to dismiss, which argued that he could not properly be charged with attempted abuse or neglect of a child involving sexual exploitation*

Martinez argues that he should not have been prosecuted for attempted child abuse under NRS 200.508 because the statute applies only when a child suffers physical pain or substantial mental harm, and no child was involved in his actions here. He also argues that NRS 200.508(2) does not apply to the facts here because that section applies only to people "responsible for the safety or welfare of a child," which does "not include a child prostitute's 'john.'" Martinez contends that NRS 432B.100, which NRS 200.508 cross-references, "requires an actual child" for the charge to apply. As a result, Martinez claims that the district court erred by denying his motion to dismiss.

Whether a statute covers certain conduct is a legal question subject to de novo review. *State v. Castaneda*, 126 Nev. 478, 481, 245 P.3d 550, 552 (2010). NRS 200.508(1) provides that a person is guilty of abuse,

Supreme Court
of
Nevada

15

(O) 1947A

neglect, or endangerment of a child if they "willfully cause[ ] a child who is less than 18 years of age" either (1) "to suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect," or (2) "to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect." The definition of abuse or neglect includes sexual exploitation of a child under the age of 18 years "under circumstances which indicate that the child's health or welfare is harmed or threatened with harm." NRS 200.508(4)(a), (d); NRS 432B.020. NRS 432B.110(1), which the information cited, defines sexual exploitation in part as "forcing, allowing or encouraging a child . . . [t]o solicit for or engage in prostitution."

The question here is whether this statute applies if someone attempted to force, allow, or encourage someone who is not actually a child, but who is posing as one, "[t]o solicit for or engage in prostitution" as defined in NRS 432B.110(1). *See* NRS 193.153(1) (defining attempt as "[a]n act done with the intent to commit a crime, and tending but failing to accomplish it"). Martinez essentially raises a factual impossibility defense to the attempt charge. In addressing similar impossibility challenges to attempt charges, we have focused on whether the defendant had "the specific intent to commit the substantive offense." *Darnell v. State*, 92 Nev. 680, 682, 558 P.2d 624, 625 (1976) (addressing whether the defendant did "the acts necessary to consummate what would be the attempted crime"). "It is only when the results intended by the actor, if they happened as envisaged by him, would fail to consummate a crime, then and only then, would his actions fail to constitute an attempt." *Id.* Thus, we have rejected impossibility defenses to attempt charges when the specific intent to commit the underlying offense exists. *Van Bell v. State*, 105 Nev. 352, 355, 775 P.2d 1273, 1276 (1989) (affirming conviction for attempted sexual

assault where the defendant paid an undercover officer to find him a young child to have sex with); *Johnson v. State*, 123 Nev. 139, 143, 159 P.3d 1096, 1098 (2007) (affirming conviction for attempted luring of a child where the defendant corresponded with undercover officers on the belief they were children). This case is no different.

Specific intent "is 'the intent to accomplish the precise act which the law prohibits.'" *Bolden v. State*, 121 Nev. 908, 923, 124 P.3d 191, 201 (2005) (quoting *Intent (Specific Intent), Black's Law Dictionary* (6th ed. 1990)). Applied here, a charge under NRS 200.508 is appropriate so long as the record contains sufficient evidence that Martinez had the specific intent "to accomplish the precise act" of causing a child to either "suffer unjustifiable physical pain or mental suffering" *or* "be placed in a situation where the child may suffer physical pain or mental suffering" as a result of forcing, allowing, or encouraging a child to solicit for or engage in prostitution. *Id.*; NRS 200.508(1), (4)(e); NRS 432B.110(1). As explained below, we conclude that evidence exists here. The fact that there was never an actual child is inconsequential. *See Van Bell*, 105 Nev. at 353-54, 775 P.2d at 1274; *Johnson*, 123 Nev. at 142, 159 P.3d at 1097 (holding that attempted luring of a child did not require an actual child).

Martinez's remaining contentions also fail. His argument that NRS 200.508(1) cannot apply because teenage prostitutes do not "ordinarily suffer[ ] physical pain" or substantial mental harm defies common sense, is not grounded in evidence, and is presumptive. The same is true of his "public policy argument" that the statute should not be used to prosecute Martinez because "teenaged prostitutes ordinarily work through pimps." Nor is the attempted-child-abuse charge "an impermissible excursion into the Legislature's domain," as the statute defines the punishable conduct.

*Cf. Sheriff v. LaMotte*, 100 Nev. 270, 272-73, 680 P.2d 333, 334 (1984) (recognizing that the "[d]efinition of criminal conduct and setting punishments therefor is traditionally a legislative function"). For these reasons, we conclude that the district court did not err by denying Martinez's challenges to the attempted-child-abuse charge and motion to dismiss.

*Sufficient evidence supports the soliciting-a-child-for-prostitution conviction*

Martinez argues that the evidence presented by the State was insufficient to sustain a conviction for soliciting a child for prostitution, primarily because he solicited an adult, and the solicitation was complete "when he agreed to the sexual act and the consideration therefor with an adult-appearing young woman on an adult escort website."

Evidence supports a criminal conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" when the evidence is viewed "in the light most favorable to the prosecution." *Belcher v. State*, 136 Nev. 261, 275, 464 P.3d 1013, 1029 (2020) (internal quotation marks omitted). The challenged conviction is for soliciting a child for prostitution under NRS 201.354. Generally, solicitation of prostitution occurs where a "person offers, agrees, or arranges to provide sexual conduct for a fee." *Glegola v. State*, 110 Nev. 344, 347-48, 871 P.2d 950, 952 (1994). Soliciting a child for prostitution occurs where a person solicits for prostitution a child, "[a] peace officer who is posing as a child," or "[a] person who is assisting a peace officer by posing as a child." NRS 201.354(2)(a), (c) (2019); 2019 Nev. Stat., ch. 545, § 5, at 3365.

We conclude evidence presented at trial was sufficient to support a conviction of soliciting a child for prostitution. It is true Martinez initially made the offer for commercial sex before being told the sex worker's age was 17. It is also true that solicitation is generally "complete once the

(O) 1947A

request is made." *Moran v. Schwarz*, 108 Nev. 200, 203, 826 P.2d 952, 954 (1992). However, Martinez reached out to the same phone number just over a week after he was led to believe this presumed sex worker was 17, seeking commercial sex once again, and then drove to the sex worker's given address with cash for the services agreed upon in the text messages. When viewed in a light most favorable to the prosecution, this evidence alone is sufficient to support the solicitation charge. *See Belcher*, 136 Nev. at 275, 464 P.3d at 1029. And Martinez's argument that this second conversation "simply clarified the details of what the parties had already agreed to" is unpersuasive. Accordingly, this challenge fails.

*The district court did not violate Martinez's right to due process or confrontation by denying his motion to compel the identity of the person depicted in the online ad and photograph*

Martinez claims that the district court violated his right to due process under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and his right to confrontation under the Sixth Amendment, by denying his motion to compel the identity of the person depicted in the online ad and photo. The State contends that Martinez impermissibly changed his defense theory on appeal when he argues the identity of the woman was necessary to prove that Martinez was engaging in "role play" with an adult woman rather than intending to engage in sexual activity with a child.

Whether a defendant's right to due process or confrontation was violated is a question of law subject to de novo review. *Johnston v. Eighth Jud. Dist. Ct.*, 138 Nev., Adv. Op. 67, 518 P.3d 94, 101 (2022) (reviewing due process issue de novo); *Newson v. State*, 139 Nev., Adv. Op. 9, 526 P.3d 717, 721 (2023) (reviewing Confrontation Clause issue de novo). To prevail on a due process challenge under *Brady*, the defendant must show (1) "the evidence at issue is favorable to the accused"; (2) "the evidence was withheld

by the state, either intentionally or inadvertently"; and (3) "prejudice ensued, i.e., the evidence was material." *State v. Bennett*, 119 Nev. 589, 599, 81 P.3d 1, 8 (2003) (internal quotation marks omitted). The Confrontation Clause renders an unavailable witness's statements at trial inadmissible if the defendant had no "opportunity to previously cross-examine the witness regarding the witness's statement." *Vega v. State*, 126 Nev. 332, 338, 236 P.3d 632, 637 (2010) (internal quotation marks omitted). The threshold issue in a Confrontation Clause analysis is whether the out-of-court statement was testimonial. *Id.* at 339, 236 P.3d at 637.

Even assuming Martinez permissibly argues his role-play theory on appeal such that it falls within the scope of the arguments raised in his motion to compel, we conclude his due process and confrontation claims lack merit. Martinez's *Brady* challenge fails because the information is not exculpatory—he verified that the woman in the photos was an adult in front of the jury and he never learned anything more about her. His Confrontation Clause argument similarly fails because the woman's age and identity were not testimonial in nature—the actual age and identity of the model was not necessary to prosecute Martinez for attempted abuse or neglect of a child involving sexual exploitation and soliciting a child for prostitution. *Medina v. State*, 122 Nev. 346, 354, 143 P.3d 471, 476 (2006). Therefore, we reject both challenges and conclude that the district court did not err by denying Martinez's motion to compel.

*CONCLUSION*

The analysis in entrapment cases centers on the defendant's predisposition. We clarify today that it was error for the district court to utilize the "initial contact" language from *Adams* in the jury instructions on entrapment, but we find such error to be harmless. Apart from the "initial contact" language, the district court properly instructed the jury on

entrapment, including how predisposition weighs in the analysis and the factors relevant to it. As to the allegation of outrageous government conduct, we adopt the nonexhaustive six-factor test formulated by the Ninth Circuit in *Black* as an appropriate vehicle for measuring whether the government's conduct was outrageous based on the facts presented. Applying that test here, we conclude that outrageous government conduct is not present. We further conclude that Martinez's remaining contentions fail. Accordingly, we affirm the judgment of conviction.[1]

_____, J.
Herndon

We concur:

_____, J.
Lee

_____, J.
Bell

---

[1]We reject Martinez's argument that cumulative error warrants reversal. We have also carefully considered any arguments not specifically addressed herein and conclude they do not warrant a different outcome.

SUPREME COURT
OF
NEVADA

(O) 1947A